961 F.2d 219
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Vince FORD, Plaintiff-Appellant,
v.
Jay GRUWELL, Vernon Poage, David Thompson, James Arnold, and
Roy Martin, Defendants-Appellees.
 No. 91-8005.
 United States Court of Appeals, Tenth Circuit.
 April 7, 1992.
 
 Before HOLLOWAY and McWILLIAMS, Circuit Judges, and CAUTHRON, District Judge.*
 ORDER AND JUDGMENT**
 McWILLIAMS, Circuit Judge.
 
 
 1
 Vince Ford, a Wyoming citizen and resident, brought a civil rights action pursuant to 42 U.S.C. § 1983 against Jay Gruwell, Vernon Poage, David Thompson, and James Arnold, all members of the Wyoming State Highway Patrol, and others (we are not here concerned with the "others"), alleging that the four officers acting under the color of state law conspired to violate his rights under the First, Fourth, and Fifth Amendments. The four defendants by answer denied liability. Discovery ensued, and, inter alia, Ford was deposed. The defendants then moved for summary judgment based on the defense of qualified immunity. After argument, the district court granted defendants' motion for summary judgment and dismissed Ford's action. Ford appeals.
 
 
 2
 Ford, a long-time resident of Wyoming, was self-employed in the outdoor sign advertising business, and also, in season, sold fireworks. The latter enterprise involved towing mobile homes around the northeast part of Wyoming to strategic places where fireworks were then sold out of the mobile homes. Both of Ford's business endeavors involved considerable use of Wyoming highways, where, through the years, he had numerous encounters with the Wyoming State Highway Patrol. In his second amended complaint, Ford, under the heading of General Allegations, set forth facts relating to some seven confrontations with the defendants, or a combination thereof. In his opening brief, counsel for Ford states that the only issue on appeal is Ford's claim that his Fourth Amendment rights were violated by the four members of the Wyoming State Highway Patrol based on events happening on February 26, 1989 and July 6, 1989.
 
 
 3
 Paragraph 14 of Ford's second amended complaint concerns the events happening on February 26, 1989, and reads as follows:
 
 
 4
 14. On or about February 26, 1989, Plaintiff and his family were driving north on Highway 85, bound for their home in Lusk, Wyoming, when stopped by Defendant Gruwell. Once again, Defendant Gruwell claimed Plaintiff was speeding. When Plaintiff refused to sign the "promise to appear" section of the citation Defendant Gruwell issued him, Defendant Gruwell proceeded to handcuff and arrest Plaintiff. In the course of this arrest, Defendant Gruwell's excessive use of force caused Plaintiff's wrists to suffer lacerations from the handcuffs. In addition, Plaintiff's hip, which contained a pin from a previous fracture, was caused to suffer pain and inflammation as a result of the arrest proceeding. Plaintiff was not, however, taken to any place of incarceration; rather, Defendant Gruwell transported Plaintiff to Lusk, Wyoming, informed him that he would accept a fifty-five dollar ($55.00) bond in lieu of signature, and released him.
 
 
 5
 Paragraph 16 of the second amended complaint concerns the events happening on July 6, 1989, and reads as follows:
 
 
 6
 16. On or about July 6, 1989, Defendants Gruwell, Poage, Thompson and Arnold entered Plaintiff's private property in Lusk, Wyoming, demanding to see certain "paperwork" for a mobile home parked on Plaintiff's property. Defendants asserted that Plaintiff had not been issued an appropriate permit for allegedly transporting the mobile home at some earlier point in time. Plaintiff directed Defendants to the visible and appropriate permit tag affixed to the mobile home for such purposes. When Defendants refused to examine the permit tag, Plaintiff demanded that Defendants remove themselves from his property. Defendants refused to depart, despite repeated similar demands. Instead, they remained on Plaintiff's property for some forty-five (45) minutes to harass, annoy, humiliate and embarrass Plaintiff without cause and with no ensuing citation or arrest.
 
 
 7
 In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court held that all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a person should be analyzed under the "reasonableness" standard of the Fourth Amendment, rather than a "substantive due process" standard. Further, the Supreme Court stated that the "reasonableness" of a particular use of force should be judged from the perspective of a "reasonable officer" on the scene, rather than with a hindsight vision of 20-20. In this latter connection, the Supreme Court quoted with approval the language of Judge Friendly in Johnson v. Glick, 481 F.2d 1028 (2nd Cir.), cert. denied, 414 U.S. 1033 (1973) that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. In Graham, the Supreme Court reversed the Fourth Circuit because it had upheld the district court's use of the four-part "substantive due process" standard in granting a motion for a directed verdict, rather than using the "objective reasonableness" test of the Fourth Amendment.
 
 
 8
 In the instant case, the district court was fully apprised of Graham and the standard promulgated therein by the Supreme Court. As indicated, the defendants, relying on Ford's allegations in his second amended complaint and his deposition, moved for summary judgment on the ground of qualified immunity. In granting summary judgment, the district court recognized the clearly established "right of an arrestee to be free from excessive force," but went on to hold that Ford had "not demonstrated that the specific conduct [of defendant Gruwell on February 26, 1989] violated his right to be free from such [excessive] force."
 
 
 9
 In Coen v. Runner, 854 F.2d 374, 377 (10th Cir.1988), we spoke as follows:
 
 
 10
 Qualified immunity is an affirmative defense that protects government officials from personal liability unless their actions violate clearly established law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Once the defense has been raised and the plaintiffs have met their burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law, the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time. Pueblo Neighborhood Health centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988). A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity. DeVargas v. Mason & Hanger-Silas Co., 844 F.2d 714, 719 (10th Cir.1988) (citing Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).
 
 
 11
 From the allegations in the second amended complaint, and from Ford's deposition, we learn that on February 26, 1989, Officer Gruwell stopped a vehicle in the belief that the driver was speeding. The driver of that vehicle was Ford. The officer believed that Ford was driving 75 miles per hour, and Ford believed he was doing 55 miles per hour. That difference of opinion, of course, simply required resolution by an impartial judge.
 
 
 12
 Ford was then given the opportunity to sign the "promise to appear" portion of the speeding citation issued him, which he refused to do. If he had signed the "promise to appear," Ford would apparently have been free to go. When Ford refused to sign the "promise to appear," Officer Gruwell, under Wyoming law, was apparently empowered to arrest Ford, which he proceeded to do. Ford, under orders from Gruwell, put his hands behind his back, spread his legs, the handcuffing procedure apparently requiring a "wide stance" on the part of the arrestee, and the officer then handcuffed him. Ford, in his deposition, said the cuffs were too tight and scraped his wrists, drawing blood, and that when spreading his legs Gruwell kicked his legs farther apart and that in so doing he aggravated a pre-existing hip injury.
 
 
 13
 In that same deposition, however, Ford admitted that he suffered only a "skin scratch" from the handcuffs, that he was not claiming any "damages" for injuries arising out of his arrest by Officer Gruwell, and that he did not seek or require any medical attention as a result of his encounter with Officer Gruwell on February 26, 1989. In any event, Ford was then transported to Lusk, Wyoming where he was given the opportunity of posting bond or going to jail. He posted bond and went on his way.
 
 
 14
 Apparently it is agreed that under the circumstances described, Officer Gruwell had the right to arrest Ford, which included the right to have him handcuffed. Like the district court, using the "objective reasonableness" test, we see no violation of Ford's Fourth Amendment rights growing out of the conduct of the defendant Gruwell on February 26, 1989. See Hannula v. City of Lakewood, 907 F.2d 129, 132 (10th Cir.1990) where we held that the defendant, a police officer, was entitled to summary judgment based on qualified immunity, and in so doing we held, inter alia, that where the officer was making a lawful arrest a failure to loosen tight handcuffs which caused pain and minimal injury was not "excessive force."*** Under the Graham test, we believe that summary judgment in favor of the defendant, Officer Gruwell, was proper as concerns Ford's claim based on the events of February 26, 1989.
 
 
 15
 Further, we agree that the actions of the officers on July 6, 1989, meet the "objective reasonableness" test of Graham. As concerns the events of July 6, 1989, it is apparently Ford's theory that the defendants' conduct on that date somehow constituted a "seizure" of his person. As the district court noted the defendants did not arrest or otherwise "seize" Ford, and they were lawfully on Ford's business premises "to determine whether or not the vehicle had been properly permitted."
 
 
 16
 On July 6, 1989, defendants Arnold and Thompson, had observed Ford moving an over-size trailer on the state highway and they dispatched defendants Gruwell and Poage to check out the trailer and ascertain if there had been compliance with Wyoming law regarding the movement of trailers on the state's highways. When Gruwell and Poage arrived at Ford's business premises, Ford was in the process of unhitching the trailer from a pickup. Officers Arnold and Thompson arrived at the scene shortly thereafter. The officers checked the vehicle in question and requested that Ford produce the proper paperwork showing compliance with Wyoming law. Ford refused. While the officers were still on the premises Ford called and spoke with his attorney. Officer Poage also spoke briefly with Ford's attorney. The officers then left without issuing any citation.
 
 
 17
 There admittedly was a sharp verbal exchange between Ford and the officers at this confrontation on July 6, 1989, during which Officer Gruwell allegedly put his hand on his service revolver and pulled it partially out of the holster. However, there is no suggestion that the revolver was pulled completely out of its holster, let alone pointed at Ford. Further, whether the officers were on the premises 45 minutes, as alleged by Ford, or 15 minutes, as shown by patrol records, is not particularly important. What is important is that no arrest was made, no citation issued, no seizure of any "papers or effects," and, in our view, there was, under the circumstances, no "seizure" of Ford's person within the Fourth Amendment. It would seem to us that the officers had the right to at least investigate the matter. In this connection, counsel suggests that defendants' actions on July 6, 1989, in coming into the yard surrounding Ford's business premises was at most a common law trespass, which would not form the basis for a § 1983 action. We agree. Under the described circumstances, summary judgment in favor of the four defendants was proper as concerns Ford's claim based on the events of July 6, 1989.
 
 
 18
 In short, in the words of Judge Friendly, not every "push and shove" violates the Fourth Amendment, nor, we add, does every kick. The instant case does not rise to the dignity of a § 1983 action.
 
 
 19
 Judgment affirmed.
 
 
 
 *
 Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 ***
 In Hannula, at p. 131, we also stated that because of "societal costs" once a defendant raises a qualified immunity defense in a § 1983 proceeding the plaintiff assumes the "heavy burden" to show that the defendant has violated clearly established law and that a plaintiff must also show a "substantial correspondence" between defendant's conduct and such clearly established law