914 F.2d 247
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gerald W. DARNELL, Plaintiff-Appellant,
v.
H.A. PHILLIPS, Individually and as a Deputy Sheriff of the
Roanoke County, Virginia Sheriff's Department,
Defendant-Appellee.
 No. 89-6772.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1990.
Decided Sept. 19, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CA-88-376-R)
 Jonathan Martin Rogers, Strickland & Rogers, Roanoke, Va., for appellant.
 William Fain Rutherford, Jr., Woods, Rogers & Hazelgrove, Roanoke, Va. (Argued), for appellee; Elizabeth K. Dillon, Woods, Rogers & Hazelgrove, Roanoke, Va., on brief.
 W.D.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and DONALD RUSSELL and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Here we must determine whether the district court erred in granting judgment notwithstanding the verdict to a defendant police officer on plaintiff's Sec. 1983 claims for unlawful seizure and excessive use of force. The district court held that defendant had probable cause to arrest plaintiff and that, in any event, defendant was protected from damages on the unlawful seizure claim by qualified immunity. The district court also held as a matter of law that defendant did not use excessive force in making the arrest. We hold that defendant's actions in effectuating the arrest were protected by qualified immunity, and we therefore affirm the judgment of the district court.
 
 I.
 
 2
 We are cognizant of the presence of the jury verdict in favor of plaintiff in this case, and that in reviewing the grant of judgment notwithstanding the verdict we must assess the evidence bearing on defendant's claim of qualified immunity in the light most favorable to the prevailing party, here the plaintiff. Mindful of these considerations, we turn to the facts.
 
 
 3
 On the evening of April 6, 1988, plaintiff Gerald Darnell and six friends gathered at a nightclub in Roanoke, Virginia, to celebrate the birthday of one Robin Hollins. Alcoholic beverages were consumed, and at least two members of the group, Mike Arthur and Johnny Oedell, became intoxicated. Sometime after one a.m. on the morning of April 7, the group left the nightclub bound for a restaurant where they intended to eat a late-night breakfast. The group traveled in four separate cars.
 
 
 4
 Shortly before two a.m., the first car in the group, driven by Ms. Hollins accompanied by Mr. Arthur, was stopped by Deputy T.D. Valentine of the Roanoke County Sheriff's Office. Deputy Valentine stopped Ms. Hollins because he believed her to be driving erratically. The stop took place on an unlit portion of Route 11 in Roanoke County near the Botetourt County line. Deputy Valentine informed his dispatcher of his location and of his intended action.
 
 
 5
 Deputy Valentine approached Ms. Hollins' car and began to speak with her. He smelled a strong odor of alcohol and requested that Ms. Hollins leave her vehicle. Deputy Valentine led Ms. Hollins to a spot several feet behind her car and in front of his own, where he proceeded to question her in preparation for a field sobriety test.
 
 
 6
 As Deputy Valentine began the test, he was interrupted by Mr. Arthur, who had left Ms. Hollins' car and approached the two of them. Deputy Valentine instructed Mr. Arthur to return to the car, which he did. Meanwhile, the remainder of the group had arrived and had parked their cars in a line behind Deputy Valentine's squad car. Deputy Valentine resumed his questioning of Ms. Hollins, but was again interrupted, this time by another member of the group, Wolfgang Oedell. Mr. Oedell identified himself as an off-duty Botetourt County Deputy Sheriff. Deputy Valentine responded that he was attempting to conduct a field sobriety test and that everything was fine, and Mr. Oedell returned to his car.
 
 
 7
 As Deputy Valentine once again resumed administration of the field sobriety test, he saw two people approaching him from the darkness between the passenger side of his car and the woods by the side of the road. He held Ms. Hollins by the arm and retreated to see where exactly the people were coming from. The two people continued to approach, and Deputy Valentine was again forced to discontinue the field sobriety test to give his attention to the other people around him.
 
 
 8
 A few minutes later, Deputy Harold Ewers arrived to assist Deputy Valentine. Deputy Valentine requested that Deputy Ewers attempt to move the people back so that he could once again resume the field sobriety test. Deputy Ewers approached Mr. Oedell's wife, Jan Oedell, who was standing at the right front fender of Deputy Valentine's car. Upon ascertaining that Mrs. Oedell was only a friend of Ms. Hollins' and not a relative, Deputy Ewers asked her to leave for her safety and the safety of the officers. She refused. Deputy Ewers then repeated his request to Mrs. Oedell and to Mr. Darnell, who was standing just behind her. Neither complied. Deputy Ewers placed his hand on Mrs. Oedell's shoulder in an attempt to induce her to return to her car, and Mr. Oedell told Deputy Ewers that they could stand wherever they wanted and that if his wife was not under arrest to "take his damn hands off of her." Also at this time, Deputy Valentine was again interrupted in performing the field sobriety test by Mr. Arthur. In response to the increasing tenseness of the situation, Deputy Ewers requested that Sergeant H.A. Phillips, his immediate supervisor, come to their assistance.
 
 
 9
 Sergeant Phillips arrived to find two police cars and four other vehicles parked alongside the road. Deputy Valentine informed him that he had been unable to perform a field sobriety test on Ms. Hollins because of the interference of her friends. Deputy Valentine also motioned toward at least two of the men standing nearby, including Mr. Oedell and Mr. Darnell, and indicated that they had made physical contact with Ms. Hollins while he was attempting to conduct the test. Deputy Ewers informed Sergeant Phillips that he had requested the members of the group to leave a dozen times, and that they had refused.
 
 
 10
 Sergeant Phillips approached the group and directed them to leave the area. No one in the group left, and Mr. Darnell said that he would only leave after Sergeant Phillips gave him his name. Sergeant Phillips responded that his name was "Phillips," and told Mr. Darnell to leave the area or be arrested. Mr. Darnell again refused to leave the area and insisted that Sergeant Phillips give him his full name and badge number. Sergeant Phillips replied that he was "Sergeant Phillips" and that was all Mr. Darnell needed to know, and he again ordered the group to leave the area. Mr. Darnell again refused to leave and again demanded a full name and badge number. Sergeant Phillips then arrested Mr. Darnell for obstruction of justice. He placed Mr. Darnell against Deputy Valentine's car, handcuffed his hands behind his back, and placed him in the front passenger seat of his car.
 
 
 11
 While Sergeant Phillips' attention was diverted, Mr. Darnell pulled his legs through his arms so that his hands were handcuffed in front of him. He then proceeded to smoke a cigarette which one of his friends handed him. Upon discovering Mr. Darnell smoking, Sergeant Phillips discarded the cigarette, removed Mr. Darnell from the car, tightened his handcuffs, and replaced him in the car.
 
 
 12
 Soon thereafter, two more police units arrived, one from Roanoke County and one from Botetourt County. The group was quickly dispersed.
 
 
 13
 Sergeant Phillips transported Mr. Darnell to the magistrate's office, where the magistrate issued a warrant for Mr. Darnell's arrest for obstruction of justice. The magistrate also directed that Mr. Darnell would have to remain in jail until the alcohol was out of his system. Mr. Darnell was released on his own recognizance at approximately eight a.m. that morning. The Commonwealth's Attorney ultimately dismissed the charge against him.
 
 
 14
 Darnell filed suit against Sergeant Phillips under 42 U.S.C. Sec. 1983 alleging that he was arrested without probable cause and that excessive force had been used against him. The case was tried before a jury which returned a verdict in Darnell's favor for $2,500. Sergeant Phillips then moved for judgment notwithstanding the verdict, and the court granted his motion. The court ruled as a matter of law that Sergeant Phillips had probable cause to arrest Darnell, that he was entitled to qualified immunity on the unlawful seizure claim, and that whatever force he used in effectuating the arrest was not excessive.
 
 
 15
 Darnell appeals.
 
 II.
 
 16
 Police officers are shielded from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). More specifically, "whether an officer protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." Id. at 639 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982)). The contours of the right which the police officer is alleged to have violated must be sufficiently clearly established that a reasonable police officer would know that his actions were unlawful. Id. at 640.
 
 
 17
 The right which Sergeant Phillips is alleged to have violated in this case is the Fourth Amendment stricture protecting citizens from unreasonable seizures effected without "probable cause." The Supreme Court has defined "probable cause" as cause "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1974). "In dealing with probable cause ... we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " Brinegar v. United States, 338 U.S. 160, 175 (1949).
 
 
 18
 Whether Sergeant Phillips could reasonably have believed that he had probable cause to arrest Darnell for obstruction of justice depends in turn on the state obstruction of justice statute. Section 18.2-460 of the Virginia Code directs that a person has unlawfully obstructed justice if "by threats, or force, [he] knowingly attempts to intimidate or impede ... any law-enforcement officer, lawfully engaged in his duties as such...." Va.Code Sec. 18.2-460 (1988). The Supreme Court of Virginia last construed this provision in 1971. It then indicated:
 
 
 19
 "To constitute obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to 'obstruct' ordinarily implies opposition or resistance by direct action and forcible or threatened means."
 
 
 20
 Love v. Commonwealth, 184 S.E.2d 769, 771 (Va.1971) (quoting Jones v. Commonwealth, 126 S.E. 74, 77 (Va.1925)). While it is clear under Virginia law that assault of a police officer is not necessary to constitute obstruction of justice, it is unclear what conduct short of an assault is sufficiently disruptive to violate the statute.
 
 
 21
 In light of the lack of clarity under Virginia law as to exactly what conduct constitutes obstruction of justice, we think it plain that a reasonable police officer confronted with the situation with which Sergeant Phillips was confronted could have believed that he had probable cause to arrest Darnell. Sergeant Phillips was brought to the scene of the incident by a request for assistance issued by two fellow officers. It was approximately two o'clock in the morning when he arrived. Four automobiles were lined up behind two police cars beside an unlit stretch of highway. On approaching his fellow officers, Sergeant Phillips was informed that the persons standing nearby had interfered with Deputy Valentine's administration of a field sobriety test and had refused to leave the area. He was also told that at least two of the men, possibly including Darnell, had made physical contact with Ms. Hollins while Deputy Valentine was attempting to conduct the test. Ms. Hollins' friends had been drinking alcohol during the evening, and at least two were intoxicated. In addition, the police officers were outnumbered by the surrounding persons. Under these circumstances, it was objectively reasonable for Sergeant Phillips to believe that he had probable cause to arrest Darnell for obstruction of justice for refusing to leave the area where the sobriety test was being conducted and instead repeatedly insisting that Sergeant Phillips provide him with his full name and badge number. Darnell's refusal to move from the area of the sobriety test could reasonably be interpreted as an attempt to impede the police officers in pursuit of their duties by force or threat of force within the meaning of Virginia law. Accordingly, because Sergeant Phillips' actions were objectively reasonable in light of any legal rules that may have been clearly established at the time of the arrest, he is protected from an award of civil damages on the unlawful seizure claim by qualified immunity. See Anderson, 483 U.S. at 638-41.
 
 III.
 
 22
 Similarly, recovery of damages against Sergeant Phillips for excessive use of force is likewise barred by qualified immunity. At the time of Darnell's arrest, the prevailing law in this circuit with respect to claims of excessive force was set forth in Justice v. Dennis, 834 F.2d 380 (4th Cir.1987) (en banc), cert. granted and judgment vacated, 109 S.Ct. 2461 (1989). Under Justice, an arrest violated constitutional protections against the use of excessive force only if the force applied "shock[ed] the conscience" and was applied "maliciously and sadistically" so as to inflict harm. Id. at 383. We think, however, that Sergeant Phillips' conduct was also protected by qualified immunity under the reasonableness standard of Graham v. Connor, 109 S.Ct. 1865 (1989). Graham established that "claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Id. at 1871. Under this standard, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. at 1872 (citations omitted).
 
 
 23
 The district court has well assessed why plaintiff's excessive force claim cannot prevail:
 
 
 24
 Plaintiff predicates his claim that defendant used excessive force in arresting him on two actions of defendant, his pushing plaintiff against a car before handcuffing him and the tightness with which he recuffed plaintiff's wrists. Plaintiff's evidence does not indicate that defendant pushed plaintiff especially hard against a car. While Mr. Oedel stated that defendant had 'slammed' plaintiff against the car, plaintiff himself testified only that defendant had 'shoved him over against a car.' He did not indicate that he had found the act especially painful or that he had suffered any harm as a result of it. Moreover, Mr. Oedel testified that when defendant had led plaintiff toward the squad car in order to handcuff him, plaintiff had moved more slowly than defendant had intended, and on deposition Mr. Oedel stated that plaintiff had shown a little resistance while defendant was leading him. Plaintiff's evidence cannot support the view that, under the circumstances, the less than severe push defendant gave plaintiff was objectively unreasonable. Still less does it permit the conclusion that defendant's actions were so unreasonable that he acted outside the scope of his qualified immunity, that is, that a reasonable police officer could not have believed that the degree of force defendant used was reasonable.
 
 
 25
 Plaintiff did testify that as a result of the second handcuffing defendant gave him, he suffered small welts on his wrists that did not start to go away until about two days after the incident. Defendant cuffed plaintiff a second time, however, only after his first cuffing proved insufficient, in that plaintiff was able to work his hands around and smoke a cigarette. While the court does not suggest that defendant would have been justified in handcuffing plaintiff overly tightly in order to punish his insubordination, the court finds at least that, considering plaintiff's resistive actions, the minor nature of the injuries that the handcuffing inflicted, and defendant's unrebutted need to attend to the other members of the group, a reasonable police officer could have believed that the force defendant used in handcuffing plaintiff was necessary to control him.
 
 
 26
 We are in agreement with the district court that Sergeant Phillips is also protected by qualified immunity from the imposition of damages on the claim of excessive use of force.
 
 IV.
 
 27
 For the foregoing reasons, the judgment of the district court is affirmed. Judge Russell dissents from the decision herein and would reverse the judgment.
 
 
 28
 AFFIRMED.
 
 
 29
 DONALD RUSSELL, Circuit Judge, dissents.