Philip M. COOPER, Plaintiff,

v.

The CITY OF VIRGINIA BEACH, VIRGINIA, et al., Defendants.

Civ. A. No. 2:92cv478.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 8, 1993.

---

Philip M. Cooper, pro se.

Richard Jay Beaver, Office of the City Atty., Virginia Beach, VA, for defendants.

## *OPINION AND FINAL ORDER*

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on plaintiff's motions for reconsideration, and on motions for summary judgment filed by defendants the City of Virginia Beach, Charles R. Wall, and F.D. Wins. For the reasons set forth below, the court DENIES plaintiff's motions, GRANTS defendants' motions, and DIRECTS the Clerk to ENTER judgment for defendants.

## I. Procedural History

Plaintiff filed his *pro se* complaint seeking to redress alleged violations of his constitutional rights. He originally sued more than two dozen defendants. After voluntary dismissals of certain defendants by plaintiff, *see* Orders filed Oct. 1, 1992 and Nov. 23, 1992, and the involuntary dismissal of another defendant for plaintiff's failure to comply with an Order of the court, *see* Order filed Nov. 23, 1992, three defendants remain in the case.

These defendants, the City of Virginia Beach, Charles R. Wall, and F.D. Wins, filed answers. The court construed the answers as motions to dismiss. *See* Order filed Nov. 23, 1992. Defendants subsequently submitted, along with a brief, supporting affidavits and other authenticated materials. Upon defendants' properly certifying that they served plaintiff with copies of the affidavits and other authenticated materials, the court advised the parties that defendants' motions to dismiss would be treated as motions for summary judgment and that the court would consider thereupon the additional materials that defendants had submitted and properly served. *See* Orders filed Feb. 2, 1993 and Feb. 12, 1993.

By Order dated March 5, 1993, the court, among other things, granted plaintiff's motion for an extension of time, allowing him an additional fourteen (14) days to respond to defendants' summary judgment motions with any material that he wished to submit, including a brief and affidavits. Plaintiff subsequently has submitted more than a dozen documents, filing several affidavits and memoranda, and two motions for reconsideration.

Plaintiff's motions for reconsideration and defendants' motions for summary judgment are now ripe for decision.

## II. Plaintiff's Motions for Reconsideration

On March 17, 1993, plaintiff filed his objection to the court's Order of December 22, 1992, which *inter alia* denied plaintiff's motion to amend his complaint. *See* Order filed Dec. 22, 1992, at 2–3. Plaintiff also moved for reconsideration of the December 22, 1992 Order. The court perceives no reason to revisit its decision to deny plaintiff's motion to amend and therefore DENIES as untimely and meritless plaintiff's motion for reconsideration of the court's Order of December 22, 1992.

On March 17, 1993, plaintiff also filed his objection to the court's Order of March 5, 1993, which *inter alia* denied plaintiff's motion to strike. *See* Order filed Mar. 5, 1993, at 1. Plaintiff's objection also contained his motion for reconsideration of the March 5, 1993 Order. Plaintiff has not persuaded the court to reevaluate its decision to deny plaintiff's motion to strike. The court therefore DENIES plaintiff's motion for reconsideration of the court's Order of March 5, 1993.

## III. Defendants' Motions for Summary Judgment

### A. Plaintiff's Complaint

■ The court liberally construes plaintiff's lengthy *pro se* complaint.[1] *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Plaintiff alleges violations of the First, Fourth, Sixth, Ninth, Tenth, and Fourteenth Amendments cognizable under 42 U.S.C. §§ 1983, 1985, and 1986. *See, e.g.,* Compl. ¶ 4. At bottom, however, as against the defendants remaining in this case, plaintiff's complaint rests on alleged violations of the Fourth Amendment, actionable under 42 U.S.C. § 1983.[2] Plaintiff

---

1. Plaintiff's complaint may raise numerous state law tort claims. *See, e.g.,* Compl. ¶¶ 67, 86, 104, 107, 115, 222. As plaintiff and all defendants are Virginia residents, *see* Compl. ¶¶ 10, 33, the court has no diversity jurisdiction over these potential claims. Plaintiff urges the court to exercise its pendent jurisdiction and adjudicate any tort claims. The court's exercise of pendent jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The court refuses to exercise pendent jurisdiction here because the court dismisses plaintiff's federal claims. *See id.*

(court should decline to exercise pendent jurisdiction when federal claims are dismissed before trial).

2. Plaintiff's allegations simply do not implicate 42 U.S.C. §§ 1985 and 1986. Having determined that plaintiff's case arises solely under 42 U.S.C. § 1983, the court begins its analysis "by identifying the specific constitutional right[s] allegedly infringed by the challenged" conduct. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). The Fourth

complains that police officers employed by the City of Virginia Beach unreasonably seized and unreasonably searched him. (Compl. ¶¶ 35–74, 82–85.) Plaintiff raises three separate Fourth Amendment grievances: 1) unreasonable seizure; 2) unreasonable search; and 3) use of excessive force.

■ To the extent that plaintiff raises any other claims predicated on the acts of previously dismissed defendants, defendant City of Virginia Beach is not liable therefor, nor is either of the other remaining defendants so liable, for that matter. The doctrine of respondeat superior does not render a municipality liable under 42 U.S.C. § 1983 for the constitutional violations of its employees. *Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir.1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Municipal liability arises only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Plaintiff has proffered no evidence on which to ground the liability of any remaining defendant for the acts of any previously dismissed defendant(s). The court therefore GRANTS defendants' motions for summary judgment as they pertain to any claims other than the Fourth Amendment claims specifically addressed herein.

### B. Section 1983 and the Fourth Amendment

In any section 1983 case, the plaintiff must show that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988). In this case, plaintiff must show that defendants, or any of them, deprived him of

his Fourth Amendment right to be free from unreasonable searches and seizures.[3]

#### 1. Law applicable to plaintiff's unreasonable seizure claim

■ As a general principle, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). More specifically, "a Fourth Amendment 'seizure' occurs when a vehicle is stopped...." *Michigan State Dep't of Police v. Sitz,* 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). In cases where the seizure falls short of a " 'technical arrest'," *Terry,* 392 U.S. at 19, 88 S.Ct. at 1879, and results from "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat," *id.* at 20, 88 S.Ct. at 1879, "the conduct involved ... must be tested by the Fourth Amendment's general proscription against unreasonable ... seizures," *id.* The bipartite inquiry into the justification for a "stop" considers "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880.

■ An arrest, which is a seizure distinguished from a mere stop by the degree of its intrusiveness, must be supported by probable cause. *United States v. Watson,* 423 U.S. 411, 417, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976). "[P]robable cause is a fluid concept." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). Probable cause exists "where the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable

Amendment applies as against the states by operation of the Fourteenth Amendment Due Process Clause. *Wolf v. Colorado,* 338 U.S. 25, 27–28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949), *overruled on other grounds by Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

3. There seems to be no dispute that defendants are persons who acted under color of state law. *See Monroe v. Pape,* 365 U.S. 167, 169–87, 81 S.Ct. 473, 474–84, 5 L.Ed.2d 492 (1961), *overruled in part by Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

person to believe that a crime has been or is being committed by the person to be arrested." *United States v. Miller*, 925 F.2d 695, 698 (4th Cir.) (Powell, J.) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)), *cert. denied*, —— U.S. ——, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991). A court determines whether probable cause exists to support an arrest by undertaking a "totality-of-the-circumstances analysis." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

■ As a general rule, "the police must, whenever practicable, obtain advance judicial approval of . . . seizures through the warrant procedure. . . ." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. One exception to the general rule, however, permits "a peace officer . . . to arrest without a warrant for a misdemeanor or felony committed in his presence. . . ." *Watson*, 423 U.S. at 418, 96 S.Ct. at 825.

### 2. Law applicable to plaintiff's unreasonable search claim

"[A] search ordinarily must be based on probable cause." *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 667, 109 S.Ct. 1384, 1391, 103 L.Ed.2d 685 (1989). In making a probable cause determination in the search context, "[t]he task . . . is simply to make a practical, commonsense decision whether, given all the circumstances . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. As a general rule, "subject only to a few specifically established and well-delineated exceptions," *Horton v. California*, 496 U.S. 128, 133 n. 4, 110 S.Ct. 2301, 2306 n. 4, 110 L.Ed.2d 112 (1990), "warrantless searches are presumptively unreasonable," *id.* at 133, 110 S.Ct. at 2306. Searches exempt from the warrant requirement, however, include those conducted incidentally to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). In the context of a warrantless search incident to an arrest, "[t]he Supreme Court has held that where the formal arrest quickly follows the challenged search, it is not important that the search preceded the arrest." *Miller*, 925 F.2d at 698 (citing

*Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980)).

### 3. Law applicable to plaintiff's excessive force claim

The Supreme Court has made clear that "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, —— U.S. ——, ——, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). The Fourth Amendment accordingly requires that searches be performed in a reasonable fashion. *Terry*, 392 U.S. at 27–28, 88 S.Ct. at 1883. In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court discussed the framework for deciding the reasonableness, and hence the constitutionality, of the force used to effect a particular seizure:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," . . ., its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . .

*Id.* at 396, 109 S.Ct. at 1871 (citations omitted).

In a number of excessive force cases, courts have considered the constitutionality of the use of handcuffs. The cases indicate that the presence, nature, and extent of any resulting injury constitute important elements in the reasonableness calculus. In *Darnell v. Phillips*, No. 89–6772, 1990 WL 134599, 1990 U.S.App. LEXIS 16531 (4th Cir. Sept. 19, 1990), wherein plaintiff predicated his excessive force claim in part on "the tightness with which defendant [hand]cuffed plaintiff's wrists," *id.*, 1990 WL 134599 at *5, 1990 U.S.App. LEXIS 16531 at *13, the evidence indicated that the handcuffs caused small welts on plaintiff's wrists that did not begin to dissipate until about two days after the incident, *id.*, 1990 WL 134599 at *5, 1990 U.S.App. LEXIS 16531 at *14. "While the court [did] not suggest that defendant would have been justified in handcuffing plaintiff overly tightly in order to punish his insubor-

dination," *id.,* 1990 WL 134599 at * 5, 1990 U.S.App. LEXIS 16531 at * 14–* 15, the Fourth Circuit found that the force used in handcuffing plaintiff was reasonable. *Id.,* 1990 WL 134599 at * 5, 1990 U.S.App. LEXIS 16531 at * 15. The court identified "the minor nature of the injuries that the handcuffing inflicted," *id.,* 1990 WL 134599 at * 5, 1990 U.S.App. LEXIS 16531 at * 15, as a significant factor affecting its conclusion.

In *Ford v. Gruwell,* 1992 WL 74266, 1992 U.S.App. LEXIS 7267 (10th Cir. Apr. 7, 1992), the Tenth Circuit held that "where the officer was making a lawful arrest a failure to loosen tight handcuffs which caused pain and minimal injury was not 'excessive force.'" *Id.,* 1992 WL 74266 at * 3, 1992 U.S.App. LEXIS at * 9. The Eighth Circuit ruled, in *Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076 (8th Cir.1990), that plaintiff's "allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [in]sufficient to support his claim of excessive force." *Id.* at 1082. In *Navratil v. Parker,* 726 F.Supp. 800 (D.Colo.1989), plaintiff alleged a violation of his Fourth Amendment rights because "his wrists became numb from handcuffs." *Id.* at 803. The court granted defendant's motion for summary judgment, finding among other things that "[n]o medical attention was necessary. . . ." *Id.* The court held that "[w]here, as here, the decision to arrest was objectively reasonable, handcuffing the arrestee does not constitute unreasonable force." *Id.*

In *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989), the plaintiff asserted under oath that the defendant police officer "applied the handcuffs so tightly that they not only broke the skin, but left apparently permanent scars on [plaintiff's] wrists and disabled him from his employment for about two weeks." *Id.* at 478. The Fifth Circuit held that the plaintiff's affidavit created material issues of fact regarding the significance of his injury and the unreasonableness of the defendant's use of force. *Id.* at 480. In *Simpson v. Saroff,* 741 F.Supp. 1073 (S.D.N.Y.1990), the court held that since plaintiff alleged, *inter alia,* "swollen and bleeding wrists from the tight handcuffs, as well as a faintly detectable scar

on her left wrist, her complaint [was] sufficient to allege a § 1983 claim." *Id.* at 1078.

### C. Standards for Deciding Motions for Summary Judgment

The court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court reviews the record as a whole and in the light most favorable to the nonmoving party: "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2521, 91 L.Ed.2d 202 (1986).

On a motion for summary judgment, the court's role is a limited one: "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. A genuine issue for trial is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. The issue of fact must be material as well as genuine. The inquiry thus focuses ultimately on "whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252, 106 S.Ct. at 2512. Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [because then] there is no 'genuine issue for trial.'". *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

To avoid summary judgment for a defendant, then, a plaintiff must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, [as to] which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477

U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The plaintiff must present "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.[4]

### D. Analysis

#### 1. Plaintiff's unreasonable seizure claim

##### a. The initial stop

■ Viewed in the light most favorable to plaintiff on defendants' motions, the summary judgment record reads as follows. On or about the night of March 15, 1992, two Virginia Beach police officers, one of whom was defendant Wins, pulled over plaintiff's car. The officers told plaintiff that they initially stopped him because the right tail light and headlights of his vehicle were not operating. (Compl. ¶ 49; Pl.'s Dep. at 57–58; Wins Aff., Ex. 4, at 1.)

Plaintiff denies that the headlights were not shining. (Pl.'s Dep. at 58.) With respect to the tail light, plaintiff asserts that he had replaced a burned out bulb in the right tail light just the day before he was stopped, and that the tail lights then were functioning properly. (Compl. ¶ 49; Tr. of June 27, 1991 trial, at 61.) Plaintiff further states that when he embarked on the trip in question, the tail light worked. (Pl.'s Dep. at 114.) Plaintiff also offers the testimony of the owner of the car, who states that when she "drove the car [immediately after plaintiff's arrest] the ... taillights did operate effectively." (Auer Aff. at 1.)

Plaintiff himself admits, however, that he examined the equipment on the car following the stop, after he had been released from custody, and found that "[o]ne bulb out of the bulbs on the rear wasn't glowing.... What had happened, it simply jarred loose, the right taillight." (Pl.'s Dep. at 115.) Plaintiff further concedes that the car had "a dirty contact," (Pl.'s Dep. at 113, 114), that is, "a little bit of oxidation on the contact, on the—

on the socket that the bulb fits in," (Pl.'s Dep. at 113). Plaintiff allows that a bulb loosely fitted into a socket with a dirty contact "might not light up." (Pl.'s Dep. at 113–114.)

Plaintiff offers no direct evidence that his right tail light was operating when he was pulled over. Indeed it would be impossible for plaintiff himself so to testify. The tail light is at the rear of the car. Plaintiff was driving the car, facing forward. The tail light was outside plaintiff's field of vision. Without any witnesses, plaintiff can present only circumstantial evidence, which is offered to support the inference that the light was functioning at the time of the stop by showing that it operated properly both therebefore and thereafter. Circumstantial evidence is not by its very nature incompetent evidence. The evidence plaintiff offers to substantiate his claim, however, carries no weight.

Plaintiff's proof that the tail light was functioning prior to the traffic stop consists in part of his averment that when he embarked on the trip that ended in his arrest, the tail light was operating. The court already has described the physical layout of an automobile. The relative positions of the driver and the tail light and the limited scope of human sight preclude a finding that the driver of the car could have personal knowledge of whether the tail light was shining. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. 602. Plaintiff, as the driver of the car, thus cannot testify at all, let alone credibly, that the tail light was illuminated at any time on the night in question.

Plaintiff's other evidence that the light was operating prior to the stop is his statement that he placed a new bulb in the right tail light the day before he was stopped, and that

---

4. Plaintiff voices his concern, (Pl.s' Aff. in Supp. of Obj'ns and Response to Summ.J., at 1, ¶ 5), that the court's consideration of defendants' motions for summary judgment tramples on his Seventh Amendment right to a jury trial. Plaintiff's concern is misplaced. The court does not violate any Seventh Amendment right by considering or granting summary judgment pursuant to

Federal Rule of Civil Procedure 56. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336, 99 S.Ct. 645, 654, 58 L.Ed.2d 552 (1979) (summary judgment does not violate the Seventh Amendment) (citing *Fidelity and Deposit Co. v. United States,* 187 U.S. 315, 319–21, 23 S.Ct. 120, 121–22, 47 L.Ed. 194 (1902)).

the tail lights were functioning properly at that time. This testimony is admissible, as plaintiff plainly had an opportunity to view the light when installing the replacement bulb. In the context of plaintiff's other statements, however, this testimony points to a continuing problem with the tail light manifesting itself on the night in question, more than it suggests that plaintiff solved the problem the previous day. Moreover, plaintiff diminishes the probative value of his statement that the light worked the day before the stop, by further declaring that the socket into which he placed the new bulb had a dirty contact that could cause the bulb to fail to shine.

Plaintiff's evidence that the light was operating after the traffic stop consists solely of Terry Auer's statement that when she drove the car immediately after plaintiff's arrest, the tail light worked. Again, the driver of the car could not have observed the tail light. One can drive around corners. One cannot see around them. In the face of an apparent physical impossibility, Ms. Auer, like plaintiff before her, fails to explain how she knows that the tail light was glowing while she was driving the car. Thus, Ms. Auer's assertions are inadmissible for her lack of personal knowledge, and in any event possess no probative value.

Plaintiff's only unequivocal, cogent circumstantial evidence refutes his claim that the initial traffic stop violated the Fourth Amendment. Plaintiff admits that he specifically checked the car after he had been stopped and found one of the tail lights inoperative. He states, "it simply jarred loose, the right taillight." (Pl.'s Dep. at 115). In conjunction with plaintiff's admission that the bulb socket was oxidized, his statement that the bulb was loose constitutes strong circumstantial evidence that the light was out when the officers stopped plaintiff.

Defendants, moreover, though not required to negate plaintiff's claim, *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552, offer the only direct evidence that the right tail light was dark when the officers stopped plaintiff. Defendant Wins states that he observed the plaintiff "driving w[ith] no lighting equipment on ... back of vehicle." (Wins Aff., Ex. 4, at 1.) Plaintiff corroborates defendant Wins' opportunity to observe the lights on the rear of plaintiff's vehicle. (Pl.'s Dep. at 52 ("they [the officers] were proceeding right behind me")).

The evidence presented on defendants' motions for summary judgment allows for one reasonable conclusion only, namely, that plaintiff's vehicle had an unlit tail light. All of the direct evidence and all of the probative circumstantial evidence buttress this conclusion. The evidence that plaintiff offers to suggest otherwise is inadmissible or insubstantial.

Under the law of both the Commonwealth of Virginia and the City of Virginia Beach, it is unlawful for any person to drive a vehicle with a lighting device that is defective or in unsafe condition. Va.Code Ann. § 46.2–1003 (Michie 1989); City of Va. Beach Motor Vehicle & Traffic Code § 21–103.[5]

The summary judgment record shows clearly that reasonable suspicion, and in fact probable cause, existed to believe that plaintiff was committing a traffic infraction. A reasonable person could point to the facts appearing on the record, that plaintiff was operating a vehicle with a lighting device, a tail light, in an unsafe, unlit, condition, and could conclude from those specific and articulable facts that plaintiff was violating the law. No rational trier of fact could conclude by a preponderance of the evidence that the officers were without justification in stopping plaintiff. The evidence, even when viewed most favorably for plaintiff, plainly shows probable cause to believe that plaintiff was committing a traffic infraction.[6] That is to

5. A violation of Title 46.2 of the Virginia Code constitutes a traffic infraction punishable by a fine of up to $200. Va.Code Ann. § 46.2–113 (Michie 1989 Supp.).

6. Plaintiff apparently was acquitted at a jury trial on the charge of driving with defective or unsafe equipment. Plaintiff has not argued that such

verdict gives rise to any collateral estoppel here. The court doubts, in any event, that the criminal verdict should have any preclusive effect here, given the differences in the issues present in the criminal and civil cases and the shifting burdens and standards of proof. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) (under the

say, the initial traffic stop of plaintiff's vehicle did not violate the Fourth Amendment.

On the initial stop aspect of plaintiff's unreasonable seizure claim, then, no genuine issue of material fact exists. Defendants are entitled to a judgment as a matter of law. The court thus GRANTS defendants' motions for summary judgment to the extent that they pertain to plaintiff's claim that the initial stop was unconstitutional.

### b. The arrest

■ Plaintiff alleges that defendant Wins, without probable cause, arrested him for "DUI," driving under the influence of alcohol. (Compl. ¶¶ 66, 85.) Although the court again views the evidence in the light most favorable to the nonmoving party, plaintiff's own evidence alone establishes that probable cause existed for his DUI arrest. Before the arrest, plaintiff admitted to defendant Wins that he had been drinking beer earlier that night. (Compl. ¶ 46; Pl.'s Dep. at 55–56; Tr. of June 27, 1991 trial, at 61.) Plaintiff concedes that defendant Wins thought that he could smell alcohol on plaintiff. (Compl. ¶ 46; Pl.'s Dep. at 56.) Plaintiff further concedes that a breath test revealed that his blood did in fact contain some alcohol. (Pl.'s Dep. at 72.)

In Virginia, it is a Class 1 misdemeanor to operate a motor vehicle while under the influence of alcohol. Va.Code Ann. §§ 18.2–266(ii), –270 (Michie 1988 Supp.). The existence of probable cause depends on whether a reasonable person could believe that the person to be arrested was committing a crime. Plaintiff's own evidence is clear, and disproves his claim that he was arrested without probable cause. He was driving a car. He admitted on the scene that he had been drinking before getting behind the wheel that night. Defendant Wins said that

he could smell alcohol on plaintiff. In sum, defendant Wins knew of facts that indisputably could allow a reasonable person to conclude that plaintiff was driving while under the influence of alcohol. Defendant Wins thus had probable cause to arrest plaintiff for DUI.

The summary judgment record as a whole, indeed plaintiff's own proof alone, shows that plaintiff's arrest was not unlawful.[7] With respect to the arrest component of plaintiff's unreasonable seizure claim, therefore, no genuine issue of material fact exists, and defendants are entitled to a judgment as a matter of law. The court accordingly GRANTS defendants' motions for summary judgment to the extent that they pertain to the arrest component of plaintiff's unreasonable seizure claim.

2. Plaintiff's unreasonable search claim.

■ Once again, the court examines the record in the light most favorable to plaintiff on defendants' motions for summary judgment. Once again, the court concludes that plaintiff's claim cannot withstand those motions. The record shows that plaintiff was searched before defendant Wins announced that plaintiff was under arrest. The arrest came, however, after plaintiff's admission to defendant Wins that he recently had been drinking beer and after defendant Wins' assertion that he smelled alcohol. (Compl. ¶ 52; Tr. of June 27, 1991 trial, at 61–62.) In other words, as explained above,[8] at the time plaintiff was searched, probable cause existed to arrest him for DUI. A warrantless search incident to a lawful arrest, even a search that precedes the arrest, such as the search of which plaintiff here complains, presents no Fourth Amendment problem. Thus no genuine issue of material fact exists on plaintiff's unreasonable search claim, and defendants are entitled to a judgment on that claim as a matter of law. The court therefore

---

doctrine of collateral estoppel, a prior judgment precludes the relitigation of issues actually litigated and necessary to the outcome of the first action).

7. Plaintiff ultimately was not charged with DUI. His blood alcohol content of .01%, as measured by a breath test administered by police, gave rise to a presumption that he was not under the influence of alcohol. See Va.Code Ann. § 18.2–

269(1) (Michie 1988 Supp.) In the context of this case, however, the disposition of plaintiff's arrest is irrelevant. The Fourth Amendment does not require an arresting police officer to be infallible in his assessment of whether a crime has been committed. It simply demands that probable cause support any arrest.

8. See supra at 17.

GRANTS defendants' motions for summary judgment with respect to plaintiff's unreasonable search claim.

### 3. Plaintiff's excessive force claim

Viewed in the light most favorable to plaintiff, the summary judgment record shows that at the time of his arrest, plaintiff was handcuffed so tightly that his hands almost immediately grew numb. (Compl. ¶ 56; Tr. of June 27, 1991 trial, at 62.) The evidence demonstrates simply that "the handcuffs were too tight. They hurt." (Pl.'s Dep. at 38.) Plaintiff has neither alleged nor offered proof of any lasting or serious injury flowing from the use of handcuffs.

Defendant Wins' handcuffing plaintiff in itself was not unreasonable, especially as plaintiff apparently was under the influence of alcohol. Further, plaintiff has failed to offer evidence of harm sufficient to support his excessive force claim. In the absence of a genuine issue with respect to the material fact of injury, defendants are entitled to a judgment as a matter of law. The court thus GRANTS defendants' motions for summary judgment with respect to plaintiff's excessive force claim.

### IV. Summary

The court DENIES plaintiff's motions for reconsideration, GRANTS defendants' motions for summary judgment, and DIRECTS the Clerk to ENTER judgment in favor of defendants.[9]

Plaintiff is advised that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The written notice of appeal must be received by the Clerk within thirty (30) days of the date of this Opinion and Final Order.

9. The court finds oral argument unnecessary for the resolution of the case. Moreover, the court's decision to grant defendants' motions for summary judgment moots plaintiff's untimely filed motion and demand for oral hearing. See Fed. R.Civ.P. 78; Rule 11(K), Local Rules of Practice, United States District Court for the Eastern District of Virginia.

The Clerk is DIRECTED to send a copy of this Opinion and Final Order to plaintiff and to counsel for defendants.

It is so ORDERED.