# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

TYRAN HARRIS,

        *Plaintiff-Appellant,*

v.

CITY OF VIRGINIA BEACH, VIRGINIA;
JAMES K. SPORE; ALFRED M.
JACOCKS; CHARLES R. WALL; D. W.
DEAN; MARK R. TIEDEMANN; W. W.
BAKER, Virginia Beach Police
Officers,

        *Defendants-Appellees.*

No. 00-1704

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CA-00-50)

Argued: April 6, 2001

Decided: May 22, 2001

Before WILKINSON, Chief Judge, and NIEMEYER and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Michael Denis Kmetz, JONES, SHELTON & MALONE,
Norfolk, Virginia, for Appellant. Mark Douglas Stiles, CITY

ATTORNEY'S OFFICE, Virginia Beach, Virginia, for Appellees. **ON BRIEF:** Theresa B. Berry, BERRY, ERMLICH, LOMAX & MEIXEL, Virginia Beach, Virginia, for Appellant. Leslie L. Lilley, Kimberly R. Van Essendelft, CITY ATTORNEY'S OFFICE, Virginia Beach, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This case requires us to determine whether the district court erred in dismissing the claims stemming from Tyran Harris' arrest for driving under the influence ("DUI"). Finding no error, we affirm.

### I.

At approximately 12:01 a.m. on October 23, 1999, Virginia Beach Police Officer D.W. Dean stopped the car operated by plaintiff Tyran Harris. The parties' accounts of the ensuing events differed substantially. Harris claimed that Dean stopped him without probable cause because Harris is African-American. Harris alleged that on the night in question, he maintained constant proper control of his vehicle. Harris denied having admitted to Dean that he had consumed alcohol earlier in the evening. Further, Harris asserted that there was no beer or other alcohol in his car.

Harris contended that he passed every field sobriety test that Dean required him to perform. Nevertheless, Dean arrested Harris for DUI. Harris alleged that Dean used unreasonable force when he subsequently handcuffed Harris and forced him into the squad car. Further, Harris maintained that Dean did not loosen the handcuffs when Harris asked him to do so, and Dean made threatening remarks. Harris stated that he refused to take a breath alcohol test until he met with a magis-

trate judge. After the magistrate judge explained the Virginia Implied Consent law to him, Harris submitted to the test. The first two times, the machine registered 0.00%. The third time it registered 0.01%. Dean then conferred with Officer Brian Decker about whether to bring Harris to the hospital to conduct a drug test. Ultimately, Dean and Decker decided to test Harris. Harris did not test positive for drugs.

For his part, Officer Dean claimed to have followed Harris for about one-half mile before stopping him. Dean claimed that he did not know the identity or race of the driver. Dean contended that he stopped the vehicle because Harris was driving erratically. After he stopped Harris, Dean noticed that Harris' eyes were bloodshot, glassy, and watery, and that Harris was slurring his speech. Dean also claimed to have detected an odor of alcohol about Harris, and observed two open 22-ounce beer bottles in the vehicle. One of the bottles was empty. The second bottle was partially full and was situated within reach of the driver. According to Dean, Harris admitted to drinking one beer in the previous hour and to having consumed the two beers in his vehicle earlier that evening. Based on the above information, Dean suspected Harris of DUI. Dean subsequently conducted field tests to determine Harris' sobriety. Dean claimed that Harris failed these tests. Dean also asserted that he never employed physical force on Harris.

Dean alleged that when Harris passed the breath alcohol test, Dean thought that the test was insufficient to explain Harris' odd behavior. Consequently, Dean thought a blood test was in order to check for drugs or a combination of drugs and alcohol. Dean consulted with another police officer, Brian Decker, to see if such a test was justified. Decker agreed that it was after observing that Harris appeared groggy with bloodshot, glassy, and watery eyes, and Harris' speech was slow and at times incoherent. Around 3:00 a.m., Harris took a blood test. While the results of the test were negative, the examination revealed that Harris had an elevated temperature (100.3 degrees) and heart rate (126 beats per minute).

Harris sued Dean, other Virginia Beach police officers and officials, and the City of Virginia Beach for violating his constitutional

rights. The district court dismissed all of Harris' claims. Harris appeals.

## II.

### A.

Harris' first claim was against defendants Spore, Wall, Jacocks, Baker, and Tiedemann. Spore is the City Manager of Virginia Beach. Wall is the former Chief of Police for Virginia Beach. Jacocks is the acting Chief of Police. Baker is a captain and Tiedemann is a sergeant with the Virginia Beach Police Department. The district court noted that in claims brought under 42 U.S.C. § 1983, supervisory "[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Furthermore, the court noted that a plaintiff's § 1983 action against a particular defendant must be dismissed if the plaintiff's reason for naming the defendant is based solely upon the theory of respondeat superior. *See Vinnedge*, 550 F.2d at 928. The district court held that because Harris did not allege that any of these five defendants were personally involved in the alleged deprivation of Harris' civil rights, it would dismiss this claim.

### B.

Harris' second claim was against the defendants for conspiring to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985(3). The district court noted that a plaintiff "alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 [must] plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *See Gooden v. Howard County, Maryland*, 954 F.2d 960, 969-70 (4th Cir. 1992). The district court held that Harris did not allege specific facts showing an agreement between two or more of the defendants which resulted in a deprivation of his civil rights. The court also held that, under *Gooden*, the fact that Harris is African-American and the police officers are white is not sufficiently specific to state a claim for conspiracy under 42 U.S.C. § 1985(3). The district court finally noted that Harris failed to allege any facts that would indicate that the decision by Officers Dean and Decker to submit Har-

ris to a blood test constituted a conspiracy to deprive him of his civil rights. The court accordingly dismissed Harris' conspiracy claim.

C.

Harris' third claim was for an equal protection violation based upon the alleged practice of racial profiling by Virginia Beach police officers. Harris argued that he had identified violations of the civil rights of both himself and four other African-Americans which demonstrated a pattern, practice, or custom of racial profiling. Harris presented affidavits from four other African-Americans who alleged that they were stopped in Virginia Beach without probable cause. Harris also argued that Officer Dean's arrest records indicated that 26.58% of his 1999 DUI arrests were of African-Americans, yet African-Americans over the driving age in Dean's patrol area accounted for only 9.16% of the area's population.

The district court held that Harris had not presented sufficient evidence to support his racial profiling claim. First, the court noted that Harris had failed to present any evidence to dispute Dean's assertion that he did not know the identity or race of the driver prior to stopping Harris' vehicle. Furthermore, the court noted that a police memorandum issued on December 7, 1998 indicated that the official policy of the Virginia Beach Police Department prohibits racial profiling.

Next, the court held that Harris' statistical evidence did not establish any element of his claim. The court noted that statistical evidence is generally not sufficient to show that similarly situated persons of different races were treated unequally. *See United States v. Armstrong*, 517 U.S. 456, 470 (1996); *United States v. Olvis*, 97 F.3d 739, 745 (4th Cir. 1996). The district court held that Harris' statistical evidence provided no basis for comparing the treatment of similarly situated white individuals. Also, the court stated that Virginia Beach is part of a metropolitan area, and residents of neighboring cities regularly travel through Virginia Beach. Therefore, the court held that Harris' comparison to the African-American population of Dean's patrol area in Virginia Beach was not persuasive.

Finally, the district court held that the four affidavits submitted by other African-Americans did not create an issue of fact concerning the

question of whether the City of Virginia Beach engaged in racial pro-filing. The court noted that three of the four affiants did not provide the names of the police officers who allegedly stopped them without probable cause. And while the fourth affiant provided the names of the two police officers who stopped him, neither of those officers were named as defendants in this case.

The district court accordingly granted defendants' motion for sum-mary judgment on this claim.

### D.

Harris' fourth claim charged that Officer Dean used excessive force in arresting him. The district court noted that claims alleging the use of excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its reasonableness standard. *See Graham v. Connor*, 490 U.S. 386 (1989). The court stated that in reviewing whether the use of handcuffs is reasonable, the plaintiff must allege more than a de minimis injury. *See Cooper v. City of Virginia Beach, Virginia*, 817 F. Supp. 1310, 1314 (E.D. Va. 1993); *see also Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (noting that plain-tiff's claim that her handcuffs were too tight was so insubstantial as to fail to support her Fourth Amendment claim). The district court held that Harris' allegations that his handcuffs were too tight and that Dean used abusive language were insufficient to support an excessive force claim. The court determined that since Harris had neither alleged nor offered proof of any serious injury resulting from Dean's conduct, it would grant Dean's motion for summary judgment.

### E.

Harris' final claim was that Officer Dean violated his constitutional rights by arresting him without probable cause. The court recognized that most of Dean's statements in support of his actions were disputed by Harris. The court noted, however, that there was uncontradicted evidence in the record to support the conclusion that Dean acted rea-sonably under the circumstances. First, Harris presented no evidence to dispute Dean's assertion that Dean did not know the identity or race of the driver prior to stopping the vehicle. There was nothing to dispute the time of the stop, the darkness, and the fact that Dean spot-

ted Harris' vehicle while driving behind it. Second, Officer Decker concurred in Dean's assessment that Harris appeared to be under the influence of drugs and ought to be tested. Third, although Harris did not test positive for the specific drugs tested, the hospital evaluation indicated that three hours after the arrest, Harris had an elevated temperature (100.3 degrees) and heart rate (126 beats per minute). The court held that this evidence supported Dean's assessment that Harris' physical condition was altered from what would be considered normal. This in turn supported Dean's claim that at the time of the field sobriety tests, Harris' behavior was impaired and not normal.

The district court held that Harris had not presented any evidence to support his claim that Dean arrested him for some reason other than that Harris was impaired in some manner. The court held that in view of the importance of not using hindsight to second-guess an officer's decision, it could not say that Dean acted unreasonably. Accordingly, the district court granted Dean's motion for summary judgment on this claim.

### III.

Having had the benefit of oral argument and the parties' briefs, we conclude that the district court correctly dismissed Harris' claims. Accordingly, we affirm on the reasoning of the district court's careful opinion in this case.

*AFFIRMED*