**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Bernice Malloy MILLER, Defendant–Appellee.**

No. 89–5698.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 29, 1990.

Decided Jan. 30, 1991.

As Amended Feb. 12, 1991.

Thomas E. Booth (argued), U.S. Dept. of Justice, Washington, D.C. (Robert H. Edmunds, Jr., U.S. Atty., Charles T. Francis, Asst. U.S. Atty., Greensboro, N.C., on the brief), for plaintiff-appellant.

Anne Rebecca Littlejohn, Greensboro, N.C., for defendant-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, SPROUSE, Circuit Judge, and HADEN, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

POWELL, Retired Associate Justice:

The question presented in this case is whether a police officer has probable cause to arrest a defendant when the officer is acting on an informant's tip and has corroborated a substantial portion of that tip through personal observation. The informant in the case before us had not provided the police with information in the past, but was providing this information in order to gain leniency on pending state charges. We hold that under these circumstances there was sufficient probable cause for a warrantless arrest, and reverse the district court's suppression of the evidence gained from a search incident to that arrest.

I

Investigator C.L. Patrick works for the Winston–Salem ABC Law Enforcement Division which is assigned to enforce state and local liquor, drug, and gambling laws. Patrick's duties primarily involve drug surveillance operations. He has worked as a law enforcement officer for twelve years, including four years on the Winston–Salem Police Department's Narcotics Squad. On

August 8, 1989, a woman was arrested in Winston–Salem, North Carolina, on state charges. Shortly after her arrest, Patrick spoke with the woman. He promised her that if she provided information to the authorities he would inform the sentencing judge, through the district attorney, of her cooperation. Patrick was unaware of any previous instances when this woman had supplied information to the police.

The woman agreed to cooperate. She told Patrick that Bernice Miller, the appellee, would be bringing a shipment of drugs from New York City. The informant said that the appellee would be traveling by bus and would arrive in Winston–Salem either Wednesday or Thursday of that same week. When the informant mentioned appellee's name, Patrick remembered that he had arrested the appellee for possession of cocaine about a year earlier. Patrick showed the informant a photograph of the appellee. The informant identified the person in the photograph as the person who would arrive at the bus station with the drugs.

Patrick set up surveillance at the Winston–Salem bus station on Wednesday, August 9, 1989, but he did not see the appellee get off any of the buses arriving from New York. The following morning he telephoned the informant before proceeding to the bus station. The informant told Patrick that the appellee would be arriving that day and would be wearing blue jeans and a blouse. The informant also said the appellee would be carrying a brown tote bag with a shoulder strap. Patrick then proceeded to the bus station and waited in the observation tower for the buses from New York to arrive.

As the passengers disembarked from the first bus to arrive from New York that day, Patrick identified the appellee among them. He observed that appellee was dressed as the informant had described and carried a brown tote bag. She also held a package wrapped in newspaper that was ripped revealing that beneath the paper, the package also was wrapped in plastic.

Patrick and another law enforcement officer approached the appellee.[1] The officers informed her that they had been told that she was transporting drugs. They then ordered her to go to the snack area of the bus station. When they arrived there, Patrick advised the woman that he was going to search her brown bag. Appellee handed the bag to him. In it, Patrick found personal items, needles, and syringes. The appellee told the officer she was diabetic. He replied that he knew she was. Next, Patrick asked for the box wrapped in paper. As appellee handed him this box she said, "You got me." Hearing Transcript at 41. Patrick searched the box and found 480 glassine bags filled with a substance later determined to be heroin. He then told the appellee that she was under arrest and transported her to the police station.

The appellee was indicted on one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a). Before her trial began, appellee moved to suppress the heroin seized from her at the bus station. At the suppression hearing, Patrick testified that he did not tell the appellee she was free to leave when he asked her to go to the bus station's snack area. Nor did he ask for her consent to search her bags.

The district court granted the appellee's motion and suppressed the heroin seized from appellee on the grounds that the officers at the bus station lacked probable cause either to arrest the appellee or search her belongings. The court held that where an officer is using an unknown informant's information, that officer must take steps independent of merely observing to check the veracity of the information. The court found that Patrick did not conduct any investigation beyond waiting at the bus station with the hope that appellee would arrive. The appellant, the United

1. Neither Patrick nor the other officer had a warrant for appellee's arrest or a warrant to search her belongings. Both the government and appellee concede that Patrick lacked probable cause up to the time he saw appellee get off the bus, and that he could not have obtained the warrant before that time.

States, now appeals the order suppressing the evidence.

## II

■ As no issue of fact is presented, the district court's probable cause determination made under the Fourth Amendment presents a question of law. Accordingly, our review of that court's determination is *de novo*. The appellant, the United States, argues that the search of the box carried by the appellee was a search incident to a lawful arrest. Appellee argues that the search cannot have been incident to her arrest because she was not formally arrested until after Patrick had searched her.

■ The Supreme Court has held that where the formal arrest quickly follows the challenged search, it is not important that the search preceded the arrest.[2] *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564–65, 65 L.Ed.2d 633 (1980); *see also Sibron v. New York*, 392 U.S. 40, 76–77, 88 S.Ct. 1889, 1908–09, 20 L.Ed.2d 917 (1968) (Harlan, J., concurring); *United States v. Hernandez*, 825 F.2d 846 (5th Cir.1987). Appellee's formal arrest occurred almost immediately after Patrick searched her belongings and satisfies this Court's requirement that the search incident to an arrest be closely related in time to that arrest. *E.g., Creasy v. Leake*, 422 F.2d 69 (4th Cir.1970). The search of appellee's bag, therefore, was incident to her formal arrest, but we must determine whether that arrest was lawful before the heroin was found.

■ In order for the heroin seized at the bus station to be admissible as fruits of a search incident to an arrest, we must determine whether Patrick had probable cause to arrest the appellant at the time that the search occurred. *Sibron*, 392 U.S. at 63,

88 S.Ct. at 1902–03; *see also Rawlings*, 448 U.S. at 111, 100 S.Ct. at 2564–65. In general, a warrantless arrest is proper for purposes of the Fourth Amendment where the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe that a crime has been or is being committed by the person to be arrested. *See Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949).

■ An informant's tip is rarely adequate on its own to support a finding of probable cause. In assessing whether an officer acting on an informant's tip has probable cause, we look to the "totality of the circumstances" surrounding the information available to the officer. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). One important factor in determining whether an informant's tip has established probable cause is the degree to which the arresting officer can corroborate that tip. *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Gates*, 462 U.S. at 242–44, 103 S.Ct. at 2334–35.

The district court found that Patrick lacked probable cause because he had failed to conduct an independent investigation to corroborate the information supplied by the informant. Although the district court did not directly cite any authority for its holding that corroboration of an informant's tip can be achieved only by the police conducting an independent investigation, we assume that the court relied upon *Gates* and *Draper* and this Court's opinion in *United States v. Porter*, 738 F.2d 622 (4th Cir.1984).[3]

We believe that the district court's holding confuses corroboration with one of the

---

**2.** The fruits of such a search, however, cannot be used to justify that arrest. *Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902–03, 20 L.Ed.2d 917 (1968).

**3.** In its memorandum opinion, the trial court said: "It has long been established that the use of information supplied by a confidential informant is often sufficient to provide probable cause for a search. *See Draper v. United States*,

358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Porter*, 738 F.2d 622 (4th Cir.1984). However, along with this principle has developed the requirement that the informant's information be corroborated through some independent efforts on the part of the officers themselves." *United States v. Miller*, CR–89–190–WS, slip op. at 3 (M.D.N.C. Oct. 25, 1989).

means by which it may be achieved. In each of these three cases, *Gates, Draper,* and *Porter,* the "corroboration" came from the police observing a substantial portion of what the informant's tip had said they would see, thereby creating a reasonable conclusion that the other information supplied by the informant—that a felony was being committed—was correct. None of these cases creates a requirement that police officers acting on an informant's tip must corroborate that tip in some specific way such as conducting an independent investigation. Such a rigid requirement is the type of "specific test" the Court rejected in adopting the "totality of the circumstances" approach to determining probable cause. *See Gates,* 462 U.S. at 230, 103 S.Ct. at 2328.

The Supreme Court has upheld a warrantless arrest based on an informant's tip where the arresting officers conducted no investigation beyond observing the predictions supplied by an informant's tip occur in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Indeed the circumstances and information before Investigator Patrick at the time he searched the appellee are almost identical to those before the arresting officer in *Draper.*

### III

In *Draper,* federal narcotic officers based in Denver received a tip from a paid informant that a man carrying heroin would arrive by train from Chicago on one of two days. The informant described the man's general appearance, the clothes he would be wearing, and the bag he would be carrying. The informant also said that this man always walked fast. The officers staked out the Denver train station on the first day and saw no one matching the description arrive on any train from Chicago. On the second day, however, they observed a man matching the informant's description get off a Chicago train and walk quickly towards the exit. They promptly arrested him and seized heroin found in his possession. The Supreme Court held that the arrest was lawful. The Court reasoned

that the officers had personally verified most of the informant's tip through their observations and, therefore, had probable cause to suspect that the remaining unverified piece of information contained in the tip—that the man would be carrying heroin—was also true. *Draper,* 358 U.S. at 313, 79 S.Ct. at 333.

■ Appellee argues that *Draper* is distinguishable from her case because the informant in *Draper* was a paid informant who had given the agents accurate tips in the past. Under the "totality of the circumstances" approach to establishing probable cause, an informant's veracity, reliability, and basis of knowledge are highly relevant, but they are simply factors to be considered in examining the total information available to the arresting officer. *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328; *see also Alabama v. White,* — U.S. —, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990) (anonymous tip by telephone that was significantly corroborated by circumstances was adequate for police to stop defendant).

The informant who provided Patrick with the tip was not a known reliable informant, and the record is unclear as to whether or not she provided her source for this information. We believe, however, that there were other indicia of reliability in this case. *See Gates,* 462 U.S. at 233, 103 S.Ct. at 2329–30. The informant's interest in obtaining leniency created a strong motive to supply accurate information. The informant hoped that by giving reliable information she would receive a lenient sentence. If she provided false information she had nothing to gain and could have risked an additional charge for falsification. We do not believe that *Draper* is distinguishable from this case.

Viewing the totality of the circumstances confronting Inspector Patrick, we find that the informant's tip which was substantially corroborated by Patrick's observations established probable cause for him to arrest the appellee. There were reasonable assurances that the informant was not fabricating the information. Secondly, Patrick had arrested the defendant before on drug charges. He knew the appellee and knew that she had been involved in illegal narcot-

ics in the past.[4]  Given these factors that pointed towards the tip's reliability,[5] we believe that when Patrick personally observed the events at the bus station which corroborated most of the tip, it was reasonable for him to believe that the unverified portion of that tip was correct.  Therefore we conclude that a reasonable person would believe that appellant was committing a felony—transporting illegal drugs—and that Patrick had probable cause to arrest appellee before he searched her belongings.

### IV

Accordingly, we reverse the decision of the district court.

REVERSED AND REMANDED.

4.  The district court's opinion did not mention Patrick's prior arrest of appellee.  The fact that appellee had been arrested by Patrick and the nature of that arrest were before that court.  The prosecutor did not mention the nature of the arrest during the hearing, but did say that the arrest was for a drug violation in the response to the motion to suppress.  Response to Motion to Suppress, at 1.

5.  The government argues that another factor to be considered in determining whether there was probable cause for appellee's arrest is the suspicious nature of the package she carried.  Pat-

rick testified that appellee's package was wrapped in several layers of plastic.  Although he also testified that it is common for drug carriers to wrap drugs in plastic, he said he had never seen a package wrapped like this one.  The district court found that there was nothing suspicious in the way the box was wrapped.  Transcript at 80.  We are given no information by which we can assess the correctness of this finding, and, therefore, cannot say it is clearly erroneous.  The finding stands and we do not rely on it in our analysis.