25 F.3d 1039
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Leroy JONES, Plaintiff-Appellee,
and
Vivian Fleming JONES, Plaintiff,
v.
Frank POWELL, Sheriff of Richland County; Fred Riddle; L.
E. Mcneely; John Edwards; Investigator Weaver, Individual
Deputies of Richland County, Sled and Richland County
Sheriff's Department, Defendants-Appellants.
 No. 92-1985.
 United States Court of Appeals, Fourth Circuit.
 Argued March 10, 1994.
Decided June 1, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Matthew J. Perry, Jr., District Judge. (CA-89-1253-3-0).
 Joseph Crouch Coleman, Columbia, SC, for appellant.
 Eleazer Robert Carter, Columbia, SC, Brenda Reddix-Smalls, Columbia, SC. for appellees.
 Brenda Reddix-Smalls, Columbia, SC, for appellees.
 D.S.C.
 REVERSED AND REMANDED.
 Before ERVIN, Chief Judge, and WILKINS and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Leroy Jones, Sr. (Jones) and his wife, Vivian Jones, brought this action under 42 U.S.C.A. Sec. 1983 (West 1981) against Frank Powell, the Sheriff of Richland County, South Carolina; Richland County Sheriff's Deputies Fred Riddle, L. E. McNeely, and John Edwards; and South Carolina Law Enforcement Division Agent McKinley Weaver. Jones principally alleged that his Fourth and Fourteenth Amendment rights were violated by his unlawful arrest and a search of his automobile on June 21, 1986.[1] Jones also brought state-law claims for invasion of privacy, assault, abuse of process, and intentional infliction of emotional distress. The jury returned a general verdict for the defendants. Thereafter, the district court granted Jones' motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a), concluding that the verdict was against the clear weight of the evidence. The district court certified the propriety of the grant of a new trial for immediate appeal pursuant to 28 U.S.C.A. Sec. 1292(b) (West 1993). Because the district court abused its discretion in granting a new trial, we reverse and remand with instructions to enter judgment for the defendants.
 
 I.
 
 2
 In order to understand the events occurring on June 21, 1986, some background concerning Jones' family is necessary. Prior to that date, Jones' son (Jones, Jr.) and his wife had serious domestic difficulties. As a result, she and their 14-year-old son (Jones' grandson) went to live with her parents, the Johnsons. Thereafter, the Johnsons began to experience a number of incidents of harassment, including arsons of their home, vehicle, and business. At some point during the separation, Mr. Johnson shot Jones, Jr.
 
 
 3
 At approximately 4:00 a.m. on June 21, 1986, Jones' grandson was shot in the head and seriously wounded during a drive-by shooting at the Johnsons' home. Due to the animosity between Jones, Jr. and the Johnsons, the Sheriff's Department immediately suspected that Jones, Jr. was involved in the shooting.[2] In the late afternoon of the day of the shooting, the Sheriff's Department received an anonymous telephone call from an individual who reported observing and overhearing a conversation between Jones and Jones, Jr. The caller stated that Jones, Jr. had passed the handgun used in the shooting to Jones and had instructed his father to throw the firearm in a river. The caller also related that Jones had departed in his vehicle. The Sheriff's Department issued a radio dispatch, relaying to deputies the information provided by the anonymous caller and informing them that Jones drove a yellow Lincoln Continental. Deputies Thomas and Winchell, who were in separate vehicles, heard the dispatch and a short while later observed Jones in his vehicle near Jones, Jr.'s home. Winchell, who was in uniform and driving a marked patrol vehicle, turned on his blue flashing lights while Jones was "a house or two" away from Jones Jr.'s home. Jones did not immediately stop, but instead proceeded to drive into the carport of his son's home and exit his vehicle before the officers could exit theirs. The parties vigorously dispute the events that followed.
 
 
 4
 Thomas testified that he unholstered his revolver and approached Jones, keeping the weapon concealed against his thigh and pointed at the ground. According to Thomas, Winchell also drew his weapon when he exited his vehicle.[3] As soon as Thomas ascertained that Jones was alone and posed no danger, he reholstered his weapon. Because he had only a general familiarity with the investigation into the shooting, Thomas radioed Deputy McNeely, who knew more about the case, to inform him of the stop. McNeely arrived 15 minutes later and explained to Jones that the Sheriff's Department had received information that Jones, Jr. had given Jones the weapon used in the shooting. McNeely then asked if he could search Jones' vehicle. Handing McNeely the key to the trunk and offering to help, Jones consented to the search.
 
 
 5
 Jones gave a sharply different account of these events. He testified that three officers stopped him and exited their vehicles with their guns drawn and pointed at him. The officers refused to tell him why he had been stopped, explained only that another officer was on his way, and held Jones until McNeely arrived over an hour later. According to Jones, McNeely also failed to tell him why he had been stopped and merely asked him for the key to his vehicle. When Jones asked McNeely if he had a warrant, McNeely simply stared at him. Jones then handed the key to McNeely because he was frightened. It is undisputed that McNeely did not find a weapon in Jones' automobile.
 
 
 6
 The jury returned a general verdict for the officers on all counts.[4] Thereafter, the district court granted Jones' motion for new trial pursuant to Federal Rule of Civil Procedure 59(a). In support of its ruling, the district court noted that although "the police were actively investigating the recent shooting and injury of Jones' grandson, Jones was not alleged to have committed the crime." Furthermore, it concluded that the anonymous tip did not provide the officers with a reasonable suspicion that Jones was engaged in or likely to become involved in criminal activity because "no witness testified concerning the reliability of the information [and] ... the information had [not] been verified through further investigation before the [officers] forcibly engaged Jones." Having determined that no basis for reasonable suspicion existed, and recognizing that the evidence was undisputed that Jones was deprived of his liberty, even if only for a relatively brief period, the district court held that the verdict "was contrary to the clear weight of the evidence and, if allowed to stand, would result in a miscarriage of justice."[5]
 
 II.
 
 7
 A district court may set aside a jury verdict and grant a new trial if it is convinced "that the verdict is against the clear weight of the evidence or is the result of prejudice or some other improper consideration." Willis v. Raymark Indus., Inc., 905 F.2d 793, 798 (4th Cir.1990), cert. denied, 113 S.Ct. 1846 (1993). We review the decision of the district court to grant a new trial only for an abuse of discretion. Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir.1984). When the district court bases its decision to grant a new trial on a legal conclusion, however, we review that determination de novo. See Bettius & Sanderson, P.C. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 839 F.2d 1009, 1012 (4th Cir.1988); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir.1993).
 
 
 8
 The Fourth Amendment, which applies to states through the Fourteenth Amendment, provides in pertinent part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.
 
 
 9
 Although the Fourth Amendment requires probable cause for an arrest,[6] an officer who has a reasonable suspicion, supported by articulable fact, that an individual may be engaged in or is about to become engaged in illegal activity may briefly detain the suspected individual for further investigation. See Terry v. Ohio, 392 U.S. 1, 22 (1968). The Supreme Court has stated:
 
 
 10
 Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.
 
 
 11
 Alabama v. White, 496 U.S. 325, 330 (1990). Although a Terry stop requires "more than an 'inchoate and unparticularized suspicion or "hunch," ' " United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 27), a brief investigative detention is proper when an officer possesses " 'some minimal level of objective justification' for making the stop," id. (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)).
 
 
 12
 The existence of reasonable suspicion is determined by considering the totality of the circumstances known to law enforcement officers, including the quality and quantity of the information possessed. White, 496 U.S. at 330. When information that creates suspicion is supplied by an informant, the "informant's 'veracity,' 'reliability,' and 'basis of knowledge' " are " 'highly relevant in determining the value of his report.' " Id. at 328 (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)). Because an anonymous caller's veracity and reliability are, of course, unknown and because an anonymous caller rarely provides the basis of his knowledge, it is seldom that such a tip, standing alone, is sufficient to provide reasonable suspicion of criminal activity. Id. at 329. An anonymous tip, however, will provide reasonable suspicion if it is corroborated by extrinsic information. See id. at 327-32.
 
 
 13
 Verifying the information contained in a tip is a common way of corroborating it, but corroboration need not be accomplished through independent investigation conducted after a tip is received. United States v. Miller, 925 F.2d 695, 698-99 (4th Cir.), cert. denied, 112 S.Ct. 111 (1991). Instead, a tip may be corroborated by extrinsic information already known to investigating officers. See id. at 699-700; Manbeck, 744 F.2d at 375 n. 18. When the information known to officers is undisputed, the question of whether the officers possessed a reasonable suspicion to support an investigatory stop is a question of law. Cf. Miller, 925 F.2d at 698 (when facts are undisputed, whether probable cause existed is a question of law).
 
 
 14
 The district court concluded that the anonymous tip failed to support a reasonable suspicion that Jones was engaged in criminal activity because no witness testified that the anonymous call was reliable or was corroborated by subsequent independent investigation. Although we agree with the district court that the reliability of the tip was not sufficiently corroborated by either of these methods, we nevertheless conclude that the district court erred in failing to recognize that information already known to law enforcement could serve to verify the anonymous call.
 
 
 15
 In our view, the undisputed facts demonstrate that the information provided by the anonymous caller, in conjunction with the information already known to law enforcement, supported a reasonable belief that Jones was engaged in or likely to engage in criminal activity. The tip itself, in this instance, supplied the basis for the anonymous caller's knowledge; the caller stated that the information was learned firsthand by observing and overhearing a conversation between Jones and his son. Further, other information furnished in the tip provided an indication of its reliability. The tip referred to the familial relationship between Jones and his son, indicating the anonymous caller's familiarity with the Joneses. And, the tip referred to a face-to-face meeting between Jones and his son that ended when Jones left in his vehicle. The officers thereafter observed Jones in his vehicle in close proximity to Jones, Jr.'s residence. In addition, because the anonymous call occurred on the same day as the shooting, there had not been time for widespread dissemination of information surrounding the shooting, particularly that Jones, Jr. was believed to be involved. It was unlikely that the anonymous caller could have fabricated the details provided based on the information available to the general public. Finally, and most significantly, the information supplied in the tip corresponded with the belief, based on the ongoing conflict between Jones, Jr. and the Johnsons, that Jones, Jr. was involved in the shooting. While the anonymous call no doubt would have been insufficient to provide probable cause for Jones' arrest, viewing the totality of the information available, we conclude that the anonymous tip enabled the officers to articulate a reasonable basis to believe that Jones was engaged in criminal activity, justifying an investigatory detention.[7]
 
 III.
 
 16
 Because we conclude that the district court erred as a matter of law in ruling that the anonymous tip failed to provide a reasonable suspicion that Jones was engaged in criminal activity, we hold that the district court abused its discretion in determining that the verdict for the officers was against the clear weight of the evidence. Therefore, we reverse the grant of a new trial and remand with instructions to enter judgment for the defendants.
 
 REVERSED AND REMANDED
 
 
 [1]
 Vivian Jones' claims arose from a search of the Joneses' home on June 27, 1986 and the loss of consortium she experienced after Jones was hospitalized for psychiatric treatment two days after the events of June 21. Because the issues that form the core of this appeal arise from claims asserted by Jones, for ease of reference we refer to Jones as having prosecuted the action
 
 
 [2]
 The record indicates that Jones, Jr. ultimately was convicted of complicity in the shooting
 
 
 [3]
 Although Thomas and Winchell initiated the stop of Jones, they were not named as defendants, and Winchell did not testify
 
 
 [4]
 The district court had granted a directed verdict in favor of Deputy Riddle prior to submitting the case to the jury
 
 
 [5]
 Jones' claims against Deputy Edwards and Agent Weaver were based on a visit they paid to him at the Baptist Medical Center on June 23, 1986 and their roles in the search of the Joneses' home on June 27, 1986. The jury returned a verdict for Edwards and Weaver on those claims. Since those claims were not addressed in the order granting a new trial, we conclude that the verdict of the jury is dispositive of those claims
 Jones sought to have Sheriff Powell held vicariously liable under S.C.Code Ann. Sec. 23-13-10 (Law. Co-op.1989), which provides in pertinent part that "[t]he sheriff shall in all cases be answerable for neglect of duty or misconduct in office of any deputy."
 
 
 [6]
 While Jones refers to the stop as an arrest, he does not seriously maintain and we do not believe that the stop rose to the level of a full-fledged arrest. The stop was not converted to an arrest simply because Thomas and Winchell drew their weapons upon initially stopping Jones. See United States v. Sinclair, 983 F.2d 598, 602-03 (4th Cir.1993). Moreover, the evidence was undisputed that the officers did not intend to arrest Jones, advise him that he was under arrest, frisk him, handcuff him, place him in a patrol vehicle, nor transport him to the station. See United States v. Manbeck, 744 F.2d 360, 377-78 (4th Cir.1984), cert. denied, 469 U.S. 1217 (1985). While the evidence was conflicting, the district court characterized the duration of the stop as relatively brief, and there was no evidence that the officers acted in a dilatory manner. See United States v. Alpert, 816 F.2d 958, 964 (4th Cir.1987). Thus, the clear weight of the evidence would not support a conclusion that Jones was subjected to an arrest
 
 
 [7]
 Because the seizure of Jones was not unlawful, the subsequent search of his vehicle was not tainted by any asserted illegality surrounding the stop. See United States v. Hassan El, 5 F.3d 726, 731 n. 4 (4th Cir.1993), cert. denied, 114 S.Ct. 1374 (1994). Moreover, the clear weight of the evidence was not contrary to the conclusion that a reasonable officer in McNeely's position would have believed that Jones' consent to the search was not coerced. See Taylor v. Farmer, 13 F.3d 117, 120 (4th Cir.1993); United States v. Wilson, 895 F.2d 168, 171-72 (4th Cir.1990) (per curiam)