UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                  No. 99-4148

NASRIN SAADVANDI,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CR-98-421-A)

Argued: September 24, 1999

Decided: October 27, 1999

Before WILKINS and TRAXLER, Circuit Judges,
and SEYMOUR, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Morris Rudolph Parker, Jr., Assistant United States Attor-
ney, Alexandria, Virginia, for Appellant. Jahangir Ghobadi, JAHAN-
GIR GHOBADI, P.C., Fairfax, Virginia, for Appellee. **ON BRIEF:**
Helen F. Fahey, United States Attorney, Vincent L. Gambale, Assis-
tant United States Attorney, Alexandria, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Government appeals an order of the district court suppressing physical evidence obtained and incriminating statements made following the warrantless arrest of Nasrin Saadvandi, contending that the district court erred in concluding that law enforcement officers lacked probable cause. For the reasons that follow, we reverse.

I.

On October 26, 1998, British customs officials intercepted a suitcase being shipped from Iran to the United States. Approximately five kilograms of opium had been concealed in the lining of the suitcase. The suitcase also contained several miscellaneous items wrapped in newspaper written in Farsi, the official language of Iran. The suitcase was addressed to "Overland Nancy, 8007 Lux Sanas Corner Centre, McLent, Virginia 22102." British officials shipped the suitcase to Drug Enforcement Administration (DEA) agents in the United States.

The DEA and the Postal Service then conducted an investigation to determine the intended recipient of the suitcase. Although the address on the package did not correspond to any known address in Virginia, the zip code matched that of McLean, Virginia. After consulting with local law enforcement officers, the federal agents determined that the intended address was probably the Overland Trading Company, 8007-L Tysons Corner Center, located in McLean. Investigators then obtained a roster of employees from the corporate parent of Overland Trading Company, which revealed that none of the employees was named Nancy. However, a criminal background check of the employees revealed that Appellee Nasrin Saadvandi had used the name "Nancy Saadat" a number of years earlier when arrested for shoplifting. Additionally, Saadvandi's employment records indicated that she had graduated from the University of Tehran in Iran. Based

2

on this information, law enforcement officials decided to attempt a controlled delivery of the suitcase to the Overland Trading Company store in McLean.

Immediately prior to the controlled delivery, two federal agents entered the store posing as customers. One of the agents wore a concealed recording device; the other was fluent in Farsi. A postal inspector posing as a mail carrier entered the store and asked Saadvandi if she was Nancy Overland. Saadvandi replied"No, no. But I know her well." J.A. 135 (internal quotation marks omitted).[1] Saadvandi then accepted the package and signed for it.

Approximately 20 seconds later, Saadvandi made a telephone call. Speaking in Farsi, she said, "Jafar, it has come." J.A. 137 (internal quotation marks omitted). She added, "Come fast," or she may have said "[G]o and finish your work and then come. "[2] Id. (internal quotation marks omitted). She then took the suitcase to a back room. Shortly thereafter, a sensor that had been placed in the suitcase signaled that the suitcase had been opened. Agents immediately entered the back of the store and arrested Saadvandi. Inspection of the suitcase did not reveal that an attempt had been made to access the secret compartment.

After advising Saadvandi of her rights pursuant to Miranda v. Arizona, 384 U.S. 436, 467-73 (1966), agents questioned her for

_____

[1] There appears to be some dispute in the record as to whether Saadvandi actually claimed to know Nancy Overland. Evidently, the transcript of the conversation that was given to defense counsel did not include the sentence "But I know her well." During the suppression hearing, however, the postal inspector who made the controlled delivery testified that he had recently supplemented the transcript based on his recollection of events and his review of the tape recording, which did not clearly capture the entire conversation. The district court appears to have accepted the Government's version of Saadvandi's statements for purposes of ruling on the motion to suppress.

[2] The transcript of the suppression hearing indicates that the parties were unclear as to whether the translator was uncertain how to translate a single statement or rather was indicating that two separate statements had been made.

3

approximately two and one-half hours. Ultimately, Saadvandi agreed to participate in a controlled delivery of the suitcase to the individual named Jafar, whom Saadvandi identified as her ex-husband. Agents placed a transmitting device in Saadvandi's purse and observed her in the parking lot as she met with Jafar. When it appeared that Saadvandi was attempting to alert Jafar that they were being watched, agents arrested them both. A subsequent search of Saadvandi's purse revealed a small quantity of opium. Several days later, Saadvandi divulged to her fellow inmates that she had attempted to alert Jafar to the presence of the transmitting device in her purse.

Following her indictment on several charges, Saadvandi moved to suppress statements made to law enforcement agents following her arrest, the opium found in her purse, and the statement made to her fellow inmates several days later, on the basis that the agents had lacked probable cause to arrest her. After a hearing, the district court granted the motion, reasoning that Saadvandi's mere acceptance of the suitcase did not support an inference that she was aware the suitcase contained contraband.

II.

"[A] warrantless arrest is proper for purposes of the Fourth Amendment where the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe that a crime has been or is being committed by the person to be arrested." United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991). Probable cause must be supported by more than mere suspicion, but need not consist of evidence sufficient to convict. See Wong Sun v. United States, 371 U.S. 471, 479 (1963). In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officers at the time of the arrest, recognizing that "probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates , 462 U.S. 213, 232 (1983); see United States v. Gray, 137 F.3d 765, 769 (4th Cir.) (en banc) (describing probable cause as "an objective standard of probability that reasonable and prudent persons apply in everyday life"), cert. denied, 119 S. Ct. 157 (1998). We review de novo the legal conclu-

4

sion of the district court that probable cause did not exist, but we review its factual findings for clear error. See Gray, 137 F.3d at 770.

The facts and circumstances known by the officers at the time of Saadvandi's arrest were sufficient to establish probable cause. Upon being presented with the suitcase, Saadvandi claimed to know the nonexistent "Nancy Overland" and signed for the package on her behalf. In doing so, Saadvandi expressed no doubt that the package was intended to be delivered to the Overland Trading Company, in spite of the inaccurate address. Promptly after signing for the suitcase, Saadvandi placed a telephone call to Jafar and told him, in Farsi, "[I]t has come," and to "[c]ome fast" or to "go and finish your work and then come." J.A. 137 (internal quotation marks omitted). The content of this telephone call would warrant a belief by a reasonable officer that Saadvandi had been expecting the package and would raise further suspicion regarding her claim to be accepting the delivery on behalf of "Nancy Overland." Further, Saadvandi's subsequent actions in immediately taking the suitcase to the back of the store and opening it evinced an interest in the contents greater than that of a mere recipient on behalf of someone else. When the information obtained during the controlled delivery is combined with the facts already known by the officers--that the suitcase contained items wrapped in Farsi-language newspaper, that Saadvandi had once lived in Iran, where Farsi is the official language, and that Saadvandi had previously used the name "Nancy"--it is clear that the totality of the circumstances warranted a belief by a reasonable officer that Saadvandi had committed or was committing an offense. Accordingly, we reverse.

III.

For the reasons set forth above, we conclude that Saadvandi's arrest was supported by probable cause. We therefore reverse the order of the district court suppressing the evidence seized and the statements made following her arrest.**3**

REVERSED

_____

**3** In view of our resolution of the probable cause issue, we need not consider the Government's alternative grounds for reversal.

5