UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 00-4115

MOROCCO CARTER,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CR-99-300)

Submitted: October 31, 2000

Decided: November 22, 2000

Before NIEMEYER, WILLIAMS, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James Wyda, Federal Public Defender, Denise C. Barrett, Assistant
Public Defender, Baltimore, Maryland, for Appellant. Lynne A. Bat-
taglia, United States Attorney, Tarra DeShields-Minnis, Assistant
United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Morocco Carter appeals his convictions on six counts of bank fraud, 18 U.S.C.A. § 1344 (West 2000), two counts of production of false documents, 18 U.S.C.A. § 1028 (West 2000), and one count of aiding and abetting, 18 U.S.C.A. § 2 (West 2000). We affirm.

I

Carter enlisted others, including James Harris and Mary Meadows, to negotiate counterfeit payroll checks that Carter had produced on computer equipment at his home. Carter used his recruits' photographs to produce phony identification documents such as driver's licenses. Harris testified that he negotiated approximately $1500 worth of counterfeit payroll checks from Schlumberger/Malco, Baltimore City, and the Baltimore Zoo. The checks were made out to Reginald Wright, Frederick McDuffy, and Duane Epps. Carter supplied Harris with picture identification cards showing Harris variously to be Wright, McDuffy, and Epps. Harris testified that each payroll check was worth about $500. He kept about one-fifth of the money and turned the rest over to Carter.

Meadows testified that she was arrested while attempting to cash a counterfeit Baltimore City payroll check that she had witnessed Carter produce on his home computer. He also gave her a driver's license and a "public school ID," both of which bore her picture but identified her as Tina Key. Like Harris, Meadows expected to receive around $100 and to turn the balance of the proceeds of the check over to Carter.

II

Officers executed a search warrant at Carter's house and seized various items, including his computer, computer diskettes, a scanner, a printer, and a digital camera. Special Agent Dye testified that he found parts of drivers' licenses and Schlumberger/Malco checks on the computer, and that these parts could have been used to produce

2

the counterfeit checks and identification documents. The district court denied Carter's motion to suppress items seized during execution of the warrant. Carter contends that the affidavit supporting the warrant was insufficient to establish probable cause and that no officer acting in good faith could have relied on the warrant.

A district court's determination of probable cause under the Fourth Amendment is an issue of law subject to de novo review. See United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991). We review a search warrant issued on the basis of an informant's tip to determine whether, under the totality of the circumstances, the issuing judge had a substantial basis for concluding that there was probable cause to believe that contraband or other evidence of a crime would be found at a particular place. The reliability and credibility of the informant and his basis for knowledge of criminal activity are taken into consideration. Police corroboration of details provided in a tip may provide probable cause for issuance of a search warrant. See Illinois v. Gates, 462 U.S. 213, 238-46 (1983).

Here, the affidavit stated that the manager of a check cashing establishment called the police after someone attempted to negotiate a Schlumberger/Malco check issued to Reginald Wright. When the manager asked for identification other than a proffered Maryland driver's license, the suspect fled, leaving the check and license behind. Harris was identified as the person in the photograph on the Wright license. Harris was located and interviewed. He told investigators that he had been negotiating counterfeit checks for a black male he knew as "Rock," who operated out of his home. Harris gave officers Rock's address, described his car, and discussed the equipment that Rock used to produce the checks and phony ID's. Additionally, Harris said that Rock was a bail bondsman.

The affidavit further stated that Harris went with agents to the address he had given them. He told the officers where in the house the computer equipment was located. The agents verified Harris' earlier description of the house and the cars parked outside the residence. Further investigation revealed that Morocco Carter, who worked for a bail bondsman, lived at that address. "Rock" could easily be a nickname for "Morocco."

3

Like the district court, we believe that the affidavit, based in part on Harris' tip, many of whose details were confirmed by investigators, established ample probable cause to support issuance of the search warrant. Moreover, even if probable cause were lacking, it did not, the "good faith" exception to the warrant requirement would apply in this case. See United States v. Leon , 468 U.S. 897, 923 (1984).

III

Next, Carter challenges the district court's refusal to conduct an in camera inspection of Harris' pretrial supervision report. It is unclear why Carter sought Harris' report when his request was based on his learning that a Carter confederate, Angela Smith, had used illegal drugs while on pretrial supervision. In any event, Carter failed to identify the specific information in the report that he wanted or why he believed the information would be of assistance to him. The district court's decision was not error. See United States v. Trevino, 89 F.3d 187, 192-93 (4th Cir. 1996).

IV

Harris testified on cross-examination that, following Carter's arrest and subsequent release, Harris wrote two letters stating that he had falsely implicated Carter. On redirect, Harris testified that he had written the letters at Carter's insistence because he was afraid of Carter. When cross-examining Carter, the prosecutor asked Carter why he had not brought the letters to the attention of the Secret Service prior to trial. And in closing argument, the prosecutor reminded the jury that Carter had not told agents about the letters. Carter maintains that the prosecutor violated the rule of Doyle v. Ohio, 426 U.S. 610 (1976), that use of a defendant's post-arrest, post-Miranda* silence to impeach his trial testimony violates the Fifth Amendment. See id. at 611. Because Carter did not raise a Doyle objection at trial, our review is for plain error. See United States v. Olano, 507 U.S. 725, 741 (1993). Given the overwhelming evidence against Carter, we conclude that there was no plain error in this case.

_____

*Miranda v. Arizona, 384 U.S. 436 (1966).

4

V

Finally, Carter complains that, while the indictment limited the charges to counterfeit Schlumberger/Malco checks and counterfeit licenses in the names of Reginald Wright and Paula Mason, the court permitted testimony about attempting to cash a Baltimore City check, the testimony of a state trooper about Carter's being denied an application for a concealed weapons permit, and sixty-six exhibits allegedly unrelated to the charges in the indictment. Those exhibits included: checks or parts of checks under other business names; licenses or other identification in the names of Tina Key, William Thornton, and others; computer files containing pieces of a concealed weapons permit; and a counterfeit weapons permit. Carter contended that admission of this evidence violated Fed. R. Evid. 403, 404(b).

We find that this "prior bad acts" evidence was relevant to such issues as motive, intent, plan, and preparation, necessary to show the context in which Carter committed the crimes, and reliable. As such, it was admissible under Rule 404(b). See United States v. Rawle, 845 F.2d 1244, 1247 n.4 (4th Cir. 1988). Nor do we think its admission was unduly prejudicial, especially when considering the other evidence of record that overwhelmingly pointed to Carter's guilt. See Old Chief v. United States, 519 U.S. 172, 191 (1997).

VI

We accordingly affirm Carter's convictions. We dispense with oral argument because the facts and legal contentions are adequately set forth in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5