**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4982

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANTHONY DEONTA REDDICKS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (7:06-cr-00010)

Submitted:  July 17, 2007        Decided:  July 30, 2007

Before KING and DUNCAN, Circuit Judges, and WILKINS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

John Weber, III, WEBER & PEARSON, P.C., Roanoke, Virginia, for Appellant.  John L. Brownlee, United States Attorney, R. Andrew Bassford, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Anthony Reddicks appeals from his conviction, by jury, of possession of more than fifty grams of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He argues that the search that produced evidence against him was predicated on an insufficient or intentionally false warrant, and that the district court's denial of his motion to suppress that evidence should be reversed. Moreover, he seeks a new trial because the district court allowed allegedly prejudicial testimony by a government expert witness. For the reasons that follow, we find no error and affirm.

I.

In support of his January 31, 2006 application for a warrant to search the residence in which Appellant and his family lived, Detective J.D. Carter of the Roanoke City Police submitted the following statement:

> Within the past 72 hours a reliable confidential informant was at the residence to be searched and observed an unknown B/M [black male] possess and offer for sale an amount of off white chunk substance. The B/M indicated to the informant that the off white chunk substance was crack cocaine. The informant is an admitted drug user and is familiar with the packaging and appearance of crack cocaine.

J.A. 65. The affidavit form in the application provided for two options: one to be checked if the officer had personal knowledge

2

of the facts contained therein, and the other to be checked if the officer was advised of those facts by an informant. Carter checked both options. He wrote further that the informant had given information leading to four convictions and the capture of a fugitive within the past several years. "All information," he commented, "has been corroborated in whole or in part by detectives." Id.

Carter obtained the warrant and executed it on the same day. In one bedroom of the house, the police found the appellant sleeping, alone and in his underwear. A few feet away lay a pair of jeans containing crack cocaine and $414 in cash. Shortly thereafter, Appellant was arrested and indicted under 21 U.S.C. § 841(a)(1).

Before trial, Appellant moved to suppress the evidence from the search, arguing that the warrant failed to evince probable cause and was obtained in reckless disregard of the truth. In support of the motion, Appellant's father testified to having been at the family residence for the seventy-two hours prior to the execution of the warrant, and that only two friends had visited the house within that time. The father admitted to having slept during the period, however.

In response, Carter testified that he met with the informant frequently, if not daily, and that he had underrepresented the informant's helpfulness in the affidavit to protect the

3

informant's identity: this informant had contributed to some twenty-five arrests in the previous five years. As to corroboration, Carter mentioned that he had verified that the address given by the informant was Appellant's family's, and that he had "dealt with [the family] several times in the past" regarding drug-related activity. J.A. 35. Crediting the officer's testimony, the court denied the motion.

At trial, the government's trace evidence expert testified that head and pubic hairs found in the jeans were consistent with Appellant's; other traces, such as leg hair and hair fragments, were not suitable for microscopic comparison. Appellant's counsel pursued this latter fact, asking, "We cannot exclude the possibility . . . that those [non-comparable hairs] came from someone else other than Anthony Reddicks, correct?" J.A. 135. The trace expert agreed: since the hairs could provide no comparison, she could not tell whose they were. On redirect, the United States responded, "Is it possible, then, that [the hairs] came from Mr. Reddicks?" J.A. 136. Over Appellant's objection, the expert answered in the affirmative.

Another United States expert witness testified that Appellant's DNA profile matched the major contributor of DNA to the jeans. This profile would be shared, theoretically, by only one in twelve quadrillion other African Americans. The jury subsequently convicted Appellant, and he timely appealed.

II.

Appellant makes three arguments: (1) that the search of his home was invalid because, on its face, the warrant was devoid of probable cause; (2) that, if the warrant did evince probable cause, it was because of Carter's intentionally or recklessly false statements; and (3) that the trace expert's affirmative answer in the colloquy described above was unduly prejudicial speculation that deprived Appellant of a fair trial. We consider each argument in turn.

A.

The standard of review for a magistrate's determination of probable cause is one of great deference. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). He or she need only find, in a commonsense appraisal of the reliability and "basis of knowledge" of those offering hearsay evidence, that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Here, Appellant asserts that the warrant was insufficient, on its face, to establish probable cause because Carter did not sufficiently corroborate the informant's story, and because the informant provided no information about the person allegedly selling the drugs.

5

Appellant's assertion that the informant's tip was insufficient absent substantial police corroboration, relying on United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991), is misplaced: Miller concerns the probable cause requirements for a warrantless arrest when the informant has never previously advised the police, id. at 696-97 n.1. By contrast, the warrant here stipulated that the informant was credible because he had previously provided valuable information five times. "[A] proven, reliable informant is entitled to far more credence than an unknown, anonymous tipster." United States v. Bynum, 293 F.3d 192, 197 (4th Cir. 2002). In addition, Carter's informant alleged first-hand experience of illegal drug activity at Appellant's residence, an obvious basis of knowledge for his information. The warrant therefore "suffices for the practical, common-sense judgment called for in making a probable cause determination." Gates, 462 U.S. at 244.

Appellant's contention that the warrant needed to identify him as the seller of the drugs misconstrues the relevant inquiry. The magistrate was to gauge the likelihood of finding contraband in the place described in the affidavit, not on the person of the appellant. Regardless of who offered the crack for sale, it was reasonably likely that crack might be found where the alleged sale occurred. See Blackwood, 913 F.2d at 142-43.

B.

Appellant also challenges the warrant via <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), under which a criminal defendant is entitled to a hearing on the truth of a warrant's allegations if he "makes a substantial preliminary showing" that the affiant's statements, essential to the probable cause determination, were either intentionally false or in reckless disregard of the truth, <u>id.</u> at 155-56. In reviewing the denial of a motion for a <u>Franks</u> hearing, we examine the court's conclusions of law de novo, but accept its findings of fact unless clearly erroneous. <u>United States v. Blatstein</u>, 482 F.3d 725, 730 (4th Cir. 2007).

Appellant argues that he made a "substantial preliminary showing" based on two allegations. First, the affidavit does not set out any information about the alleged seller of the drugs, undermining the credibility of the informant's tip. Second, the officer did not actively corroborate any of the tip beyond confirming the address. Appellant therefore concludes that Carter's sworn statements, "I have personal knowledge of the facts set forth in this affidavit" and "[a]ll information has been corroborated in whole or in part by detectives" revealed a reckless disregard for the truth.

Even if we accept Appellant's two factual allegations as true, he cannot prevail. The district judge credited Carter's

7

undisputed testimony, which establishes that he had a close confidential relationship with the informant and knew Appellant's family from previous drug-related experiences. Carter relayed a trusted source's information about a crack sale as it was given to him; this does not amount to a disregard of the truth merely because the seller was unknown to the informant. Nor, contrary to Appellant's insinuation, was the informant's story necessarily false: although Appellant's father testified that no strangers came to the house during the seventy-two hours preceding the search, the district court correctly noted that he could not have been aware of visitors while he was asleep. Finally, Carter underrepresented the informant's reliability, tending to discourage, rather than encourage, a finding of probable cause. His personal experience with Appellant's family served as both "personal knowledge" and "corroborat[ion] . . . in part by detectives" for the purposes of the affidavit. J.A. 35-36.

In sum, Appellant failed to make a substantial preliminary showing that these statements were "designed to mislead . . . or in reckless disregard of whether they would mislead" the magistrate in finding probable cause. United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990) (emphasis omitted). Even if the statements were misleading, they were not essential to finding probable cause: probable cause derived from the informant's favorable track record and his first-hand account of

8

drug activity, not from Carter's generalized assertions.  Thus, this claim fails.

C.

Appellant last contends that the trace evidence expert's testimony at trial – that it was possible that the non-comparable hair specimens belonged to Appellant – was unduly prejudicial, and the district court erred in allowing it.  Evidentiary rulings are reviewed for abuse of discretion.  <u>United States v. Lancaster</u>, 96 F.3d 734, 744 (4th Cir. 1996).  Appellant asks for a new trial, arguing that the prejudice from the expert's testimony outweighed any probative value it may have had.  We disagree for three independent reasons.

First, the trial court correctly considered the expert's statement to be an assertion of objective fact, not opinion.  The expert's statement, "It is possible . . ." drew no conclusions, and was the narrowest way of asserting that the non-comparable hairs could have, or could not have, belonged to Appellant.  As discussed below, this assertion was designed to counter Appellant's suggestion that the non-comparable hairs were not his.  This testimony therefore "tend[ed] to make the existence of [a] fact of consequence more or less probable," <u>Id.</u> at 744, and the district court did not abuse its discretion by admitting it.

Second, the answer that Appellant finds objectionable was rebuttal evidence, introduced only on cross examination after

Appellant himself brought up the topic. To be admissible, rebuttal evidence must be "reasonably tailored" to the inference it seeks to refute. United States. v. Jackson, 327 F.3d 273, 293 (4th Cir. 2003). The government's question met this standard. To paraphrase somewhat, "Is it possible that they were Reddicks's hairs?" was simply the converse of Appellant's question, "We cannot exclude the possibility that they were not Reddicks's, correct?" Appellant insinuated that the non-comparable hairs could belong to anyone (i.e., perhaps to someone other than himself). The government's question clarified that the hairs could also be Appellant's, seemingly the weakest possible assertion to rebut Appellant's insinuation. Surely this constitutes the "nexus" required between rebuttal evidence and that which is rebutted. United States v. Stitt, 250 F.3d 878, 897 (4th Cir. 2001).

Finally, the government's other evidence rendered this error, if error it was, harmless. Ignoring the non-comparable hairs, the trace evidence expert found head and pubic hairs consistent with Appellant's in the jeans containing the drugs and money. The DNA evidence linked Appellant to the jeans with scientific certainty. He was found sleeping next to those jeans alone in his underwear. Since it appears beyond a reasonable doubt that the jury would have reached the same verdict, Neder v. United States, 527 U.S. 1, 17 (1999), the conviction stands

10

regardless of whether the exchange that Appellant invited was erroneous.

## III.

For the foregoing reasons, we affirm the district court and uphold Appellant's conviction. We dispense with oral argument; because the facts and legal contentions are adequately presented in the materials before the court, oral argument is unnecessary to the decisional process in this case.

AFFIRMED